UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 93-3387

UNITED STATES OF AMERICA,

Appellee,

versus

CARLOS I. MIRO,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

(August 8, 1994)

Before WISDOM and JONES, Circuit Judges, and COBB,[*] District Judge.

COBB, District Judge:

Carlos I. Miro appeals his sentence for mail fraud. We find no error and **AFFIRM**.

## I. Background

Carlos I. Miro (Miro) engineered an insurance scam which resulted in the collapse of the Louisiana based Anglo-American Insurance Company (Anglo). The State of Louisiana licensed Anglo to do business in August, 1986. Primarily, Anglo marketed workers'

---

[*] District Judge of the Eastern District of Texas, sitting by designation.

compensation insurance. The company was purportedly reinsured by the Anglo-American International Reinsurance Company (Reinsurer), operated out of Dublin, Ireland. Miro operated the insurers, directed their solicitation of business, and successfully sought loans on the companies' behalf.

Unfortunately for the policy holders, Anglo and its Reinsurer were shams. After receiving premium payments from various subscribers, Anglo would forward these funds overseas to the Reinsurer. This gave the appearance that certain risks were covered. In reality, however, Miro instead deposited portions of these receipts into foreign bank accounts for personal use. Other portions of the proceeds were funnelled back into Anglo's accounts, fraudulently inflating the company's assets. With increased assets, Anglo could (and did) secure loans and receive authorization from the Louisiana Department of Insurance to underwrite more policies.

In addition to the reinsurance farce, Anglo received favorable treatment from the Louisiana Department of Insurance, with which the company filed quarterly and annual statements reflecting its solvency. The favorable treatment was a product of bribes sent by Miro to Mr. Sherman Barnard, the then Louisiana Commissioner of Insurance. However, when Barnard failed to secure re-election, his successor launched an investigation into Louisiana insurance fraud. Before long, the fraud became evident, and Anglo was placed in liquidation. Anglo's collapse caused a total loss estimated at over $20,000,000.00.

The United States secured an indictment charging Miro with eighteen counts of mail fraud and one count of money laundering arising out of his activities in the Eastern District of Louisiana. Subsequently, the government acquired a superseding indictment which dropped two of the mail fraud counts. The remaining mail fraud counts charged Miro with receipt through the mail of blocks of premium checks from its policy holders, the proceeds of which contributed to execution of the fraudulent scheme. The money laundering count charged Miro with executing bank transfers to London in an attempt to conceal the source of money unlawfully obtained from the mail fraud.

Perhaps coincidentally, Miro was visiting Spain at the time the grand jury returned its original indictment. When the United States began extradition proceedings, Miro was arrested and held in custody there. Miro spent approximately eight months in Spanish custody during the pendency of the extradition. Ultimately, Spain extradited Miro but limited prosecution to the mail fraud counts because the charge for money laundering did not state an offense under Spanish law. Miro was returned to the United States in July, 1992.

After negotiating with federal authorities, Miro agreed to plead guilty to certain charges. The plea agreement provided, inter alia, that Miro would plead guilty to counts one through sixteen of the superseding indictment and fully cooperate with law enforcement authorities in related prosecutions. In exchange, the government (1) would not prosecute Miro for the remaining count for

3

money laundering; (2) would not proceed with prosecution for related money laundering charges pending in the Middle District of Louisiana; and (3) would bring the extent of Miro's cooperation to the attention of the district court, and, in the government's discretion, acknowledge Miro's substantial assistance prior to sentencing pursuant to § 5K1.1 of the United States Sentencing Guidelines.

Miro entered guilty pleas on November 18, 1992. He then assisted federal authorities in four related prosecutions. As promised, the government sent a letter to the court advising it of the extent of Miro's service. Prior to sentencing, the government memorialized the letter by filing a §5K1.1 motion to acknowledge substantial assistance.

On May 26, 1993, the district court imposed sentence. That court reasoned that counts one through nine involved mailings that occurred prior to the effective date of the Guidelines and sentenced Miro to five years on each count, all to run concurrently. As to the remaining counts, the court applied the Guidelines and imposed a forty-six month term on each count, also to run concurrently.[2] With respect to these counts, the district court calculated Miro's offense level using the entire $20,000,000. See U.S.S.G. § 2F1.1(b)(1). The court ordered the forty-six month Guidelines sentence to run consecutive to the five year pre-Guidelines sentence for a total sentence of 106 months. The court

---

[2] The district court applied the Guidelines in effect at the time the offenses were committed, to avoid an ex post facto challenge. References to the Guidelines in this opinion are those applied by the district court.

considered the §5K1.1 motion, but chose not to grant a downward departure. This appeal timely followed.

## II. Discussion

We will affirm Miro's sentence unless he establishes "that it was imposed in violation of the law, was imposed because of an incorrect application of the Guidelines, or is outside the range of applicable Guidelines and is unreasonable." United States v. Parks, 924 F.2d 68, 71 (5th Cir. 1991).

### A.

Miro first argues that his consecutive sentences for pre-Guidelines and Guidelines offenses violate Double Jeopardy. The district court took into account the total amount of the loss for purposes of computing Miro's offense level because the loss was incapable of division between the pre-Guidelines and Guidelines counts. Miro argues that when the loss attributable to pre-Guidelines offenses cannot be apportioned from Guidelines offenses, Double Jeopardy requires the court to run the sentences concurrently.

We have consistently rejected similar arguments and do so again today. For starters, in Parks, we held that district courts possess wide discretion to impose consecutive sentences for pre-Guidelines and Guidelines offenses. 924 F.2d 68, 71 (5th Cir. 1991). We relied on Judge Wilkins' conclusion that "nothing in the guidelines or the Sentencing Reform Act precludes the court from ordering that a sentence imposed on a pre-guidelines count be served consecutively to a sentence imposed on a guidelines count."

Parks, 924 F.2d at 73 (quoting United States v. Watford, 894 F.2d 665, 669 (4th Cir. 1990) (Wilkins, J., Chairman of the United States Sentencing Commission)). Judge Wilkins had emphasized one fundamental distinction between pre-Guidelines and Guidelines sentences: Parole is available for the former, but not the latter. Watford, 894 F.2d at 670. We concluded that nothing in the Sentencing Reform Act precluded a judge, when fashioning what he or she believes an appropriate punishment, from ordering consecutive sentences. Parks, 924 F.2d at 73.

To be sure, Parks did not expressly decide the Double Jeopardy challenge here presented. We did, however, reject the argument in United States v. Gaudet, 966 F.2d 959, 963 (5th Cir. 1992), cert. denied, 113 S.Ct. 1294 (1993). As the government points out, the constitutional issue is really the same question addressed by Parks. In multiple punishment cases such as this, the issue is simply whether Congress intended to allow consecutive sentences when it enacted the Sentencing Reform Act. This court canvassed that question in Parks and disposed of it. We recognize the apparently contrary position taken by the Ninth Circuit in United States v. Niven, 952 F.2d 289, 294 (9th Cir. 1991). However, we are bound by our prior holdings in Parks, Gaudet, and most recently, United States v. Kings, 981 F.2d 790, 794-95 (5th Cir. 1993). We therefore hold that Miro's consecutive sentences do not violate Double Jeopardy.

**B.**

Miro's second challenge is that the Guidelines apply to

6

all of his convictions because the mail fraud scheme straddled November 1, 1987, the effective date of the Sentencing Reform Act. He argues that because the guideline commentary requires grouping of mail fraud offenses, the district court was bound to order consecutive sentences on all counts. We disagree.

The Guidelines apply to all offenses committed after November 1, 1987. United States v. White, 869 F.2d 822, 826 (5th Cir.), cert. denied, 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). The Guideline commentary suggests grouping of mail fraud counts which comprise part of a single course of conduct with a single criminal objective representing one composite harm to the victim. U.S.S.G. § 3D1.2. We are bound by the commentary when it interprets or explains a guideline unless it violates the Constitution or a federal statute, or is inconsistent with or a plainly erroneous reading of that guideline. United States v. Stinson, ___ U.S. ___, 113 S.Ct. 1913, 1917-18 (1993). However, we read Stinson only to mean that courts are bound by the commentary with respect to offenses that are actually covered by the Guidelines themselves. Congress has made it plain that the Guidelines apply only to crimes committed after November 1, 1987.

Anticipating this reading of Stinson, Miro urges that his convictions arose as part of a continuing or "straddle" offense. We have recognized that the Guidelines cover some offenses initiated prior to November 1, 1987, yet completed after that date. See Gaudet, 966 F.2d at 961 (collecting cases). A perfect example is a conspiracy initiated prior to November 1, 1987, but continuing

7

by virtue of a co-conspirator's overt act done after that date. See United States v. Devine, 934 F.2d 1325, 1332 (5th Cir. 1991); United States v. White, 869 F.2d 822, 826 (5th Cir.), cert. denied, 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). In such a case, the conspiracy conviction is sentenced pursuant to the Guidelines because the crime itself would not have been completed until after November 1, 1987.

Just because criminal activity takes place over a period of time does not mean it is a continuing or "straddle" offense. Punishments under the mail fraud statute, 18 U.S.C. § 1341, and the conspiracy statute, 18 U.S.C. § 371, are quite different. Execution of a scheme to commit mail fraud is punishable once per mailing. United States v. Blankenship, 746 F.2d 233, 236 (5th Cir. 1984). Notwithstanding the continuing nature of the scheme itself, each mailing constitutes a completed offense. Id. We therefore hold that the district court correctly imposed pre-Guidelines sentences for mailings occurring prior to November 1, 1987, even though the mailings were part of a continuing course of conduct which overlapped the effective date of the Sentencing Reform Act. See United States v. Osum, 943 F.2d 1394, 1400 n.2 (5th Cir. 1991); accord United States v. Niven, 952 F.2d 289, 293 (9th Cir. 1991).

**C.**

Miro also challenges the district court's denial of a downward departure. Miro argues that he provided substantial assistance to the authorities, and the government's filing of a motion under U.S.S.G. § 5K1.1 entitled him to the requested

8

departure.  We disagree.

The decision to grant a § 5K1.1 motion is committed to the discretion of the sentencing court.  United States v. Damer, 910 F.2d 1239, 1240-41 (5th Cir.), cert. denied, 498 U.S. 991 (1990).  Therefore, even assuming the government files a motion under § 5K1.1, a defendant is not entitled, as a matter of right, to the requested departure.  Damer, 910 F.2d at 1241.  Moreover, generally, a claim on appeal that a sentencing judge refused to depart from the Guidelines and imposed a lawful sentence provides no ground for relief.  United States v. Buenrostro, 868 F.2d 135, 139 (5th Cir. 1989), cert. denied, 495 U.S. 923 (1990).  This court will affirm a refusal to depart from the Guidelines unless the refusal was in violation of law.  Buenrostro, 868 F.2d at 139.[3]  In the past, we have declined to question a sentencing judge's refusal to depart based on a defendant's claim that he had provided substantial assistance to authorities under U.S.S.G. § 5K1.1. United States v. Rojas, 868 F.2d 1409, 1410 (5th Cir. 1989). Because it does not appear that the district court violated any law when it refused the downward departure, we reject Miro's argument.[4]

---

[3]    We have also suggested that a remand might be appropriate when the record reveals that the sentencing judge erroneously believed it lacked the authority to depart.  See, e.g., United States v. Soliman, 954 F.2d 1012, 1014 (5th Cir. 1992); United States v. Miller, 903 F.2d 341, 349 n.10 (5th Cir. 1990). However, the record in this case plainly reflects that the district judge was aware of his authority to grant the requested departure.  Consequently, Soliman and Miller have no application.

[4]    Both parties rely on Damer to assume that the district court's denial of the § 5K1.1 motion is reviewable on appeal under the abuse of discretion standard.  Surprisingly, neither party cited Rojas in its brief to this court, although Rojas decided the same issue as Damer.  More importantly, we decided Rojas prior to Damer.  When faced with conflicting panel opinions, the earlier controls our decision.  See, e.g., Smith v. Penrod Drilling Corp., 960 F.2d 456, 459 n.2 (5th Cir. 1992); United States v. Fields, 923 F.2d 358, 360 n.4 (5th Cir.), cert. denied, 500 U.S. 937 (1991).  Consequently, under Rojas, Miro's

9

Miro next contends he was denied due process because the district court punished him for exercising rights under the extradition treaty between the United States and Spain. He argues that a greater sentence was imposed because the government could not prosecute him for money laundering under the extradition treaty. We disagree.

Under the doctrine of specialty, "the requisitioning state may not, without permission of the asylum state, try or punish the fugitive for any crimes committed before the extradition except the crimes for which he was extradited." Shapiro v. Ferrandina, 478 F.2d 894, 905 (2d Cir.), cert. dism'd., 414 U.S. 884 (1973). The extradition treaty between Spain and the United States provides that "the person extradited under the present Treaty shall not be detained, tried or punished . . . for an

---

argument that the sentencing court refused to depart downward and imposed a lawful sentence provides no valid claim for relief.

Of course, in this case, the discrepancy is a distinction without a difference. Even if we were to review the district court's application of § 5K1.1 under the abuse of discretion standard, we would easily conclude no abuse of discretion occurred. The government's § 5K1.1 motion apprised the district court of Miro's cooperation and assistance in four other insurance fraud prosecutions. At the sentencing hearing, the court considered this motion and remarked, "after looking at all the facts and circumstances of this case I didn't think the downward departure would send the right message to other people who might be inclined to engage in similar conduct as Mr. Miro. And I thought that as a general deterrent it was a mistake to depart downward in this case, and I chose not to depart downward." The district court further justified the sentence by noting that the Guidelines in effect at the time of the offenses did not adequately take into account the total loss caused by Anglo's collapse.

The Pre-Sentence Investigation Report (PSR) supports the district court's conclusion. The PSR suggests that an upward departure might have been appropriate because the total loss caused by Anglo's collapse was much greater than contemplated by the Guidelines. Additionally, the PSR states that an upward departure might have been permitted on the grounds that governmental functions had been disrupted because the ultimate burden of Anglo's failure would be borne by the taxpayers of Georgia and Louisiana. Even under Damer, after examining all of the facts and the circumstances of this case, we would not conclude that the district court abused its discretion when it denied the § 5K1.1 motion.

offense other than that for which extradition has been granted." Treaty on Extradition, May 29, 1970, U.S.-Spain, art. XIII, 22 U.S.T. 737, 744. Spain extradited Miro on only the mail fraud counts, apparently because Spanish law does not prohibit nor punish money laundering.

Miro's argument on this issue rests entirely on certain comments made by the district court at sentencing. Our review is therefore governed by the plain error standard because Miro could have raised the point when the trial court's comments were made but failed to do so. See United States v. Davis, 954 F.2d 182 (4th Cir. 1992). Under FED. R. CRIM. P. 52(b), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." FED. R. CRIM. P. 52(b). This avenue is necessarily narrow, to encourage timely objection "so as to provide the trial judge an opportunity to avoid or correct any error, and thus avoid the costs of reversal." United States v. Chaney, 662 F.2d 1148, 1151 n.4 (5th Cir. 1981).

In United States v. Olano, the Supreme Court recently defined the limitations to plain error review. ___ U.S. ___, 113 S.Ct. 1770 (1993). First, there must be an error, that is, a deviation from a legal rule, unless the rule has been waived. Olano, 113 S.Ct. at 1777. Second, the error must be "clear" or "obvious." Id. Third, the substantial rights of the defendant must have been adversely affected. Id. at 1777-78. In the usual case, this requires the defendant to make a specific showing of actual prejudice. Id. at 1778. Finally, our review is

11

discretionary, and we may only correct an error meeting the above essentials if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 1779; see also United States. v. Rodriquez, 15 F.3d 408, 415-16 (5th Cir. 1994).

Governed by these standards, we cannot vacate this sentence because of any asserted violation of the specialty doctrine. We may assume, arguendo, that increasing a sentence to compensate for unextradited crimes might, under proper circumstances, be a deviation from a legal rule such that it would constitute error. However, Olano cautions that "the Court of Appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." When we review this record as a whole, United States v. Young, 470 U.S. 1, 16 (1985), we are not convinced that the district court plainly erred. First, it is undisputed that Miro was never formally prosecuted for money laundering. In addition, although the district court remarked that the consecutive sentences were (at least partially) imposed because of Miro's fight against extradition, these statements were made in response to a plea for a more lenient sentence. To this extent, the district court appears to have been simply unsympathetic toward a fugitive. Finally, the PSR did not recommend the court take into account as relevant conduct that Miro could not be prosecuted for any remaining money laundering charges. We therefore cannot conclude that the district court clearly and obviously erred.[5]

---

[5] We also doubt that Miro would be able to succeed in making a specific showing of prejudice. In order to prove that the asserted error affected his substantial rights, Miro surely must have standing to raise this

12

We additionally emphasize that we allow plain error review in only the most limited of circumstances so as not to upset the "careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." Young, 470 U.S. at 15 (quoting United States v. Frady, 456 U.S. 152, 163 (1982)). Plain error review is discretionary, exercised only when the failure to do so would result in a miscarriage of justice. Olano, ____ U.S. at ____, 113 S.Ct. at 1779. Left unchecked, a plain error results in a miscarriage of justice only when the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

Even if we were to speculate that the district court erred when it announced this sentence, the error is not the sort which seriously affects the fairness, integrity, or public reputation of judicial proceedings. After Miro induced the public to purchase bogus insurance, he pleaded guilty and was convicted for sixteen counts of mail fraud. The district court announced numerous reasons for this sentence. Among them was the thought that the applicable Guidelines did not fairly account for the total loss, which exceeded $20,000,000. The sentencing judge also noted, in addressing the § 5K1.1 motion, that the sentence would generally deter others from committing similar frauds. In short, consecutive

---

objection. In United States v. Kaufman, 874 F.2d 242, 243 (5th Cir. 1989), we suggested that a criminal defendant has no standing to argue the specialty doctrine when the asylum state has failed to raise an objection to the proceeding. There is no indication that Spain has objected to Miro's sentence.

terms for pre-Guidelines and Guidelines counts were plainly within the district court's discretion to impose.  We are satisfied that the record supports Miro's total sentence and are convinced that the failure to correct Miro's asserted error will not result in a "miscarriage of justice."  We therefore decline his invitation to vacate the sentence on the ground that it violated the doctrine of specialty.[6]

## E.

Miro finally contests his sentence as being excessive when compared with others similarly situated.  This argument need not long detain us.  In the first place, we are somewhat skeptical of this argument insofar as there has been no showing that the defendants with whom Miro would seek to align himself were sentenced under the same or similar circumstances.  That is, he has failed to specify, which of those defendants, if any, were sentenced for both pre-Guidelines and Guidelines offenses.  There likewise is no indication whether the members of Miro's "comparison pool" played as significant a role as Miro himself.  Finally, we note that both the pre-Guidelines and the Guidelines sentences were within the applicable statutory and Guidelines ranges.  We therefore hold that Miro has failed to show that his sentence was disproportionately excessive when compared with others similarly situated.  See United States v. Goldfaden, 959 F.2d 1324, 1332 (5th Cir. 1992) (rejecting disparity argument when defendant failed to

_____

[6]     For the same reasons, we reject Miro's argument that the sentence violated the plea agreement.  The plea agreement simply incorporated the limitations set forth by the extradition treaty.

14

establish that differing sentences were unwarranted).


### III. Conclusion

Today we hold that Miro's consecutive sentences do not violate Double Jeopardy.  In addition, the district court correctly declined to group all the mail fraud counts, and Miro has failed to show how the denial of the downward departure violated any law. Miro has not shown plain error with regard to his claim that he was punished for exercising extradition rights.  Lastly, the record does not support Miro's argument that he received a sentence that was disproportionately excessive when compared with others.  Our disposition of this case makes it unnecessary for us to consider whether the district court should be disqualified in the event of a remand.  Miro's sentence is therefore

**AFFIRMED.**