**Dinah Plaisance Mabes HALL et al.**

.v.

**PROFESSIONAL DIVERS OF NEW ORLEANS, et al.**

Civ. A. No. 93–1983.

United States District Court, E.D. Louisiana.

Oct. 7, 1994.

John Robert Martzell, Scott R. Bickford, Regina O. Matthews, Martzell & Bickford, New Orleans, LA, John W. Robinson, Gretna, LA, for Dinah Plaisance Mabes Hall.

Richard S. Vale, Aldric C. Poirier, Jr., Blue, Williams & Buckley, Jon Daniel Picou, Jay M. Lonero, Leininger, Larzelere & Picou, Metairie, LA, for Professional Divers of New Orleans.

Michael L. McAlpine, Richard Abelard Cozad, McAlpine, Peuler, Cozad & Davie, New Orleans, LA, for Diamond Services Corp.

John Robert Martzell, Scott R. Bickford, Regina O. Matthews, Martzell & Bickford, Harry C. Graham, III, Graham & Mayer, Earl A. Maxwell, New Orleans, LA, for Jacqueline L. Whittington.

## *ORDER AND REASONS*

BERRIGAN, District Judge.

The court has decided defendants Professional Divers of New Orleans' ("Professional Divers") motion for summary judgment. For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

The plaintiffs' decedent, Ernest Leroy Mabes, Jr., was a 34–year–old diver employed by Professional Divers. Pursuant to a contract between defendant Professional

Divers and Diamond Services, Inc. ("Diamond Services"), Mr. Mabes was working on Diamond Services' Derrick Barge Subdiamond 85 ("DB–85") as part of a salvage operation. Mr. Mabes and other workers had succeeded in bringing the wrecked boat, the M/V LANCE, to the surface, when they entered the LANCE in order to pump the water out of it. The cable suspending the LANCE broke, and the boat sank, taking Mr. Mabes and two other divers down with it. One of the divers survived. Mr. Mabes and another diver drowned.

Professional Divers states that it employed Mr. Mabes for approximately nine years, and that he spent approximately 83% of his time working aboard vessels. It also estimates that Mr. Mabes worked on 53 different vessels owned by 37 different companies, working only seven days aboard vessels owned by Diamond Services.

Among the actions brought by Mr. Mabes' survivors is a Jones Act claim against Professional Divers. 46 U.S.C.App. § 688. Professional Divers has moved for summary judgment on Mr. Mabes status as a seaman.

## II. ANALYSIS

Under FRCP 56, summary judgment is proper if the record discloses no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

The oft-cited Robison case provides the starting point for analyzing seaman status. In it, Judge Wisdom wrote:

[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel ... or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission ...

Offshore Co. v. Robison, 266 F.2d 769, 779 (5th Cir.1959).

At issue is whether Mr. Mabes meets the first requirement of the Robison test. Professional Divers begins its argument with the 5th Circuit's en banc decision in Barrett v. Chevron, 781 F.2d 1067 (5th Cir.1986). In Barrett, the Fifth Circuit held that an employee's attachment to a vessel must be viewed in light of his overall work duties. If he is injured during a one-week assignment to the crew of a vessel, but performs non-vessel work during the rest of the year, he would not qualify as a seaman. Id. at 1074–75. Further, if an employee works on several vessels, the Barrett court held that the vessels must constitute a fleet acting under common control in order for the employee to qualify as a Jones Act seaman. Id. at 1074.

Professional Divers argues that Mr. Mabes was not permanently assigned to the DB–85, noting that it was not the company's custom to assign its employees permanently to a vessel. Because Mr. Mabes worked on vessels owned by 37 different companies, Professional Divers also argues that he was not assigned to a fleet of vessels under common control. Thus, Professional Divers argues that Mr. Mabes fails to meet the Robison test, as applied by the Barrett court.

In further support of its argument, Professional Divers relies on Bach v. Trident Steamship Co., 920 F.2d 322 (5th Cir.1991), vacated 500 U.S. 949, 111 S.Ct. 2253, 114 L.Ed.2d 706, reinstated 947 F.2d 1290 (5th Cir.1991). Over the dissent of Judge Brown, a Fifth Circuit panel in Bach concluded that a river pilot was not a Jones Act seaman because he was not connected to a particular vessel or a fleet of vessels.

Finally, Professional Divers cites the Fifth Circuit's unpublished decision in Ashley v. Epic Divers, No. 91–9551 (5th Cir. Sept. 22, 1992) (per curiam), holding that a commercial diver in much the same circumstances as Mr. Mabes does not qualify as a Jones Act seaman because of his lack of connection to a fleet of vessels.

In opposition, the plaintiffs primarily rely on *Wallace v. Oceaneering International,* 727 F.2d 427 (5th Cir.1984), which was decided before *Barrett.* In *Wallace,* the court focused on "the type of duties performed" by employees claiming Jones Act status and "the extent to which ... [they] were exposed to maritime hazards." *Id.* at 433. The plaintiff in *Wallace* was not permanently assigned to a vessel or a fleet of vessels, but "was actually to move with the diving crew amongst the vessels of various owners ..." *Id.* Nonetheless, the court concluded that he was a Jones Act seaman. The court noted that "[t]he group of vessels concept has been used to expand coverage under the Jones Act, not restrict it." *Id.* at 435. Reviewing cases that applied the fleet requirement, the court stated, "These cases do not control the seaman status issue in this case, because the principal duties performed by the workers in those cases was a type ordinarily associated with activities based on land or fixed platforms." *Id.* at 433. The fleet requirement cases involved land-based workers who were transitory maritime workers, as opposed to maritime workers who had transitory vessel assignments. Under *Wallace,* Professional Divers' motion would be denied as a matter of law.

Though *Barrett* imposed a fleet requirement rule, it did not overrule *Wallace,* nor did it specifically address the issues in *Wallace.* The *Barrett* court stated:

> We do not decide whether the same principle governs the crewmember status of the maritime worker who spends virtually all of his time performing traditional seaman's duties ... but does his work on short voyages aboard a large number of vessels.

781 F.2d at 1075, n. 13. *Barrett* involved a welder who spent only twenty to thirty percent of his time aboard vessels.

The court in *Bach* stated that it was resolving the question left open by *Barrett.* 920 F.2d at 324. In so doing, however, it created a conflict with *Wallace. Bach,* and the unpublished *Ashley* decision, impose a fleet attachment requirement on traditional maritime workers. *Wallace* instructs that the nature of the work performed is controlling. This court will apply *Wallace:* "When faced with conflicting panel opinions, the earlier controls our decision." *United States v. Miro,* 29 F.3d 194, 199, n. 4 (5th Cir.1994); *see Solvang v. M/T PLAN KRISTINE,* 1994 A.M.C. 1133, 1993 WL 666703 (S.D.Tex. June 9, 1993) (applying the *Wallace* test).

Professional Divers has moved for summary judgment on the basis that Mr. Mabes was not permanently assigned to a particular vessel or to a fleet of vessels. Because the court concludes that this issue is not determinative of his Jones Act status, the court will deny the motion as a matter of law.

Accordingly, **IT IS ORDERED** that the defendants' Motion for Summary Judgment is **DENIED.**