UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-60338

_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

MATEO ALVAREZ,

                                        Defendant-Appellant.

* * * * * *

_____

No. 94-60339

_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

JULIAN TORRES,

                                        Defendant-Appellant.

* * * * * *

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                    versus

JOSE LUIS TORRES,

                              Defendant-Appellant.

_____

Appeals from the United States District Court for the
Southern District of Texas
_____
April 14, 1995

Before KING, GARWOOD and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

In this consolidated appeal, defendants-appellants Mateo Alvarez (Alvarez), Julian Torres (Julian), and Jose Luis Torres (Jose) (Defendants) complain of the sentences imposed under the United States Sentencing Guidelines (Guidelines) following their convictions on pleas of guilty to charges of conspiring to possess with the intent to distribute marihuana. Defendants argue that the district court erred in not downwardly departing to the extent recommended by the government. For the reasons that follow, we affirm.

## Facts and Proceedings Below

On November 10, 1993, a federal grand jury indicted Defendants, along with eight others, for their involvement in a

marihuana-smuggling operation from November 1990 until April 1993. Pursuant to written plea agreements, Defendants entered pleas of guilty to Count 7 of the indictment, which charged them with a conspiracy to possess with the intent to distribute more than 1,000 kilograms of marihuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).[1]  In the plea agreements, the government agreed to move for a downward departure from the applicable Guideline range based on Defendants' substantial assistance.  *See* U.S.S.G. § 5K1.1.  Defendants, however, acknowledged that the district court had discretion in determining whether and to what extent to depart.[2]

---

[1]     The November 10, 1993, indictment was superseded on December 8, 1993.  Count 7 of the superseding indictment, to which Defendants pleaded guilty, is identical to Count 7 of the original indictment.

[2]     In Alvarez's plea agreement, he stated that he understood "that the Government makes no promises or representations about the range of punishment . . . or the sentence the Defendant will receive from the Court."  At his arraignment, furthermore, the court informed him, "Do you understand that you will have no bargains . . . from me?  There'll be no deals with me, that your deal will be with the United States Attorney's Office[, which] . . . will make a recommendation . . . but I will not be bound to follow that recommendation . . . .  Do you understand that?"  Alvarez responded, "Yes, sir, I do."  Later, the court repeated this warning:  "You have no bargains with me, no promises from me. . . .  I do not have to follow [the government's recommendation] and I can sentence you to the maximum possible punishment provided by law . . . .  Do you understand that?"  Alvarez answered yes.
    In their plea agreements, both Julian and Jose stated that they understood "that the Government makes no promises or representations about the range of punishment applicable under the [Guidelines] . . . or the sentence [they] will receive from this Court."  At their arraignment, the court informed them,

    "All of you should understand that the agreement that you have reached is with the United States Attorney's office.  You have no agreement with me.  I am not bound by any agreement.  You have no promises from me.  Any

3

At sentencing on April 29, 1994, the district court assigned Alvarez a criminal history category of I and a total offense level of 36, resulting in a sentencing range of 188 to 235 months. Julian and Jose were each assigned a criminal history category of I and total offense level of 31, resulting in a sentencing range of 120 to 135 months. All three Defendants faced a statutory minimum sentence of 120 months. *See* 18 U.S.C. § 841(a)(1). As agreed, the government presented evidence of Defendants' substantial assistance under section 5K1.1 at the sentencing hearing. In exchange for this assistance and in accordance with their plea agreements, the government recommended a 24-month sentence for Alvarez and 30-month sentences for Jose and Julian. The district court granted the government's motion for a downward departure from the applicable Guideline ranges and the statutory minimum, but decided not to depart to the extent recommended by the government. Instead, the district court sentenced each defendant to 60 months in prison, half the statutory minimum, and 5 years of supervised release. The court also ordered them each to pay a $50 mandatory special assessment.

---

recommendation that the United States Attorney's office gives to me is just that, a recommendation and nothing more. I have the power to sentence you to the maximum possible punishment provided by statute, and if I do you cannot take back your plea of guilty. Do you understand . . .?"

Both Julian and Jose answered yes. The district court continued, "I am not bound by the ups or downs or the ins and outs of [these recommendations]. Do you understand . . .?" Julian and Jose again answered yes. Finally, after informing them that any benefit recommended "may not come," the court asked them, "Has anybody promised what sentence you would receive from me . . .?" Julian and Jose both answered no.

Although the district court never stated its reasons for not departing to the extent recommended by the government, it did express concern over, among other things, the sentencing disparities respecting the eleven codefendants. At Alvarez's sentencing hearing, the court remarked, "[T]his is a very extensive drug-smuggling operation, and extensive drug smugglers should be punished extensively. Just like minimal participants should not be." The court asked the government whether this was a case in which "you have the top dog testifying against the smaller persons and receiving less punishment." The same day, at Julian and Jose's sentencing, the district court observed that Alvarez, Julian, and Jose were all "significant criminal[s], . . . [a]nd yet they testify as to others and receive the same or less punishment than other persons not nearly as guilty." The district court specifically noted the sixty-month sentence imposed on a codefendant, Jose Elias Lopez, whose role was very minimal.

The district court entered judgment as to all Defendants on May 9, 1994. The same day, Defendants filed a joint, unopposed motion asking the court to reduce their sentences to the levels recommended by the government. After the district court denied their motion on June 13, 1994, Defendants brought this consolidated appeal.

### Discussion

The Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. §§ 991-998, provides that a district court may depart from the sentencing range set by the Guidelines only when it finds that "there exists an aggravating or mitigating

5

circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission . . . ."  18 U.S.C. § 3553(b); *see also* U.S.S.G. § 5K2.0.  *See, e.g., United States v. Rogers*, 917 F.2d 165, 169 (5th Cir. 1990) (enhancement allowed on the basis of an excessive criminal history point total), *cert. denied*, 111 S.Ct. 1318 (1991).  Furthermore, to impose a sentence below the statutory minimum, the district court may act only on the government's motion and only for the purpose of reflecting a defendant's substantial assistance.  18 U.S.C. § 3553(e).

We have consistently recognized that the Guidelines limit the district court's authority to deviate, upward or downward, from the applicable sentencing range.  We have repeatedly held, for instance, that it is unlawful for the district court to base its decision to depart downward on certain individual characteristics of the defendant.  *See, e.g., United States v. O'Brien*, 18 F.3d 301, 302-03 (5th Cir.) (no downward departure because of a defendant's post-conviction community service), *cert. denied*, 115 S.Ct. 199 (1994); *United States v. Lara-Velasquez*, 919 F.2d 946, 954 (5th Cir. 1990) (no downward departure because of a defendant's rehabilitative potential); *United States v. Reed*, 882 F.2d 147, 151 (5th Cir. 1989) (no downward departure because of a defendant's "worth" or "goodness"); *United States v. Burch*, 873 F.2d 765, 768 (5th Cir. 1989) (no downward departure because of the defendant's talents).  In *United States v. Ives*, 984 F.2d 649, 651 (5th Cir.), *cert. denied*, 114 S.Ct. 111 (1993), we held that disparity of sentences among codefendants is not an aggravating or mitigating factor that would support a deviation either upward or downward

from the applicable Guideline range.[3]  *See also United States v. Brown*, 29 F.3d 953, 959 (5th Cir.), *cert. denied*, 115 S.Ct. 587 (1994).

The decision to depart here, however, was not based on the actual or potential disparity of sentences among codefendants. Both sides concede that the district court properly based its decision to depart downward on Defendants' substantial assistance to the government.[4]  *See* 18 U.S.C. § 3553(e).  Nevertheless, Defendants contend that the district court, in determining the extent of the departure, improperly, and in violation of *Ives*, compared their recommended sentences to those of lower-level functionaries in the conspiracy.  In so arguing, Defendants seek to extend *Ives*, which clearly spoke only to the decision to depart and not to the extent of a departure.  As we and other circuits have recognized, however, the district court has the discretion to choose the appropriate sentence within the applicable Guideline range and to determine the appropriate extent of a downward

---

[3]  *Ives* is consistent with the nearly unanimous view of the other circuits on this particular issue.  *See United States v. Ellis*, 975 F.2d 1061, 1065-66 (4th Cir. 1992), *cert. denied*, 113 S.Ct. 1352 (1993); *United States v. Vilchez*, 967 F.2d 1351, 1353-55 (9th Cir. 1992); *United States v. Higgens*, 967 F.2d 841, 845 (3d Cir. 1992); *United States v. Meja*, 953 F.2d 461, 467-68 (9th Cir. 1991), *cert. denied*, 112 S.Ct. 1983 (1992); *United States v. Woogan*, 938 F.2d 1446, 1448-49 (1st Cir.), *cert. denied*, 112 S.Ct. 441 (1991); *United States v. Joyner*, 924 F.2d 454, 459-61 (2d Cir. 1991).  *But see United States v. Nelson*, 918 F.2d 1268, 1272 (6th Cir. 1990).

[4]  On these facts, Defendants do not contend, nor could they, that the district court's refusal to depart to the extent recommended by the government was in reality a disguised refusal not to depart at all.  The sentence imposed here was clearly a significant departure.

departure; thus, a defendant cannot appeal the extent of a departure made pursuant to section 5K1.1 unless the departure was made in violation of law. *United States v. McKinley*, No. 93-1985 (5th Cir. August 1, 1994) at 3 (unpublished); *United States v. Johnson*, 33 F.3d 8, 9-10 (5th Cir. 1994) ("the court is free to deny a departure or to grant a departure which is greater or smaller than that recommended by the government"); *United States v. Lucas*, 17 F.3d 596, 599 (2d Cir.), *cert. denied*, 115 S.Ct. 240 (1994); *cf. United States v. Miro*, 29 F.3d 194, 199 (5th Cir. 1994) (a district court's refusal to depart downward is unreviewable unless the refusal was in violation of law); *United States v. Matovsky*, 935 F.2d 719, 721 (5th Cir. 1991) (sentence imposed within the Guideline range was not in violation of law and was therefore unreviewable). *See also* 18 U.S.C. § 3742(a).

Defendants respond that the district court violated the law, in particular the rule stated in *Ives*, and thus that their sentences are reviewable on appeal. They assert that there is nothing meaningful about the distinction between deciding, on the one hand, whether to depart and, on the other, how far to depart. If disparity in sentences among codefendants is an improper basis for departure, they maintain, it likewise should be an improper basis for not departing downward to the extent recommended by the government. In support of their position, they cite the Fourth Circuit's decision in *United States v. Hall*, 977 F.2d 861 (4th Cir. 1992).

In *Hall*, the government moved for a downward departure based on the substantial assistance of the defendant, Hall, who had

8

requested that the district court also consider the sentences received by his codefendants in determining whether and how far to depart. The court granted the government's motion, but refused to consider the sentences of his coconspirators. On appeal, Hall argued that "even if the sentences imposed on his coconspirators are not a valid, independent basis for departure, once the district court departed based on substantial assistance, it erred in not considering the sentences imposed on or actually served by his coconspirators in determining the extent of the departure." *Id.* at 863. The Court rejected Hall's contention, concluding that a district court can no more rely on an invalid factor in determining whether to depart than it can in determining how far to depart:

> "If . . . a departure sentence may not stand unless a reviewing court determines that an invalid factor had no effect on the sentencing decision, it logically follows that an appellate court may not countenance a sentence in which the district court extended an otherwise proper departure sentence based upon a circumstance that could not have supported a departure in the first instance." *Id.* at 865.

Under *Hall*, therefore, the only factors on which a district court may rely in determining the extent of a downward departure are those which could independently support the initial decision to depart.

In so holding, the Fourth Circuit relied on the Supreme Court's decision in *Williams v. United States*, 112 S.Ct. 1112 (1992). In *Williams*, the Court considered the scope of appellate review of a departure sentence where the decision to depart was based in part on an invalid factor. The Court concluded that, in such cases, resentencing is necessary unless the reviewing court

determines that the sentencing court's reliance on the invalid factor was harmless. *Id.* at 1120-21. This holding does not control the situation at issue here. In this case, as in *Hall*, the district court's decision to depart was supported only by Defendants' substantial assistance to the government, a valid factor under 18 U.S.C. § 3553(e). The Fourth Circuit's holding in *Hall*SQthat *Williams* logically extends to a district court's determination of the extent of the departureSQpresupposes that the Guidelines apply to both situations. They do not. Although federal law explicitly cabins the discretion of the district court in departing upward or downward from an applicable Guideline range and in departing downward from a statutory minimum, there is simply no express limitation on the court's discretion in sentencing once it has validly decided to depart.

Except in such instances where federal law specifically limits the district court's authority, the Guidelines are not intended to disturb the traditional and almost complete deference afforded the district court in sentencing:

> "The selection of the appropriate sentence from within the guideline range, as well as the decision to depart from the range in certain circumstances, are decisions that are left solely to the sentencing court. The development of the guideline sentencing regime has not changed our view that, *except to the extent specifically directed by statute*, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence." *Williams*, 112 S.Ct. at 1121 (emphasis added; citations and internal quotation marks omitted).

A district court thus has almost complete discretion over sentencing matters to which federal law does not speak. This

discretion is recognized in the Guidelines themselves, which report that the Sentencing Reform Act "makes . . . clear that Congress intended that *no limitation* would be placed on the information that a court may consider in imposing an appropriate sentence . . . ." U.S.S.G. § 1B1.4 (commentary) (emphasis added).

Thus, although the Guidelines and the Sentencing Reform Act determine the validity of a district court's decision whether to depart, the decision as to the extent of the departure is committed to the almost complete discretion of the district court, which may consider factors beyond the narrower set that could independently support the departure in the first instance. In an analogous context, we have held that the district court may, in determining a specific sentence within the applicable Guideline range, consider a factor that may itself not support an upward or downward departure. In *United States v. Lara-Velasquez*, 919 F.2d 946 (5th Cir. 1990), the defendant complained that the district court erred in considering his "rehabilitative potential" in setting his sentence within the applicable Guideline range. We held that, even if "rehabilitative potential" is not a proper basis for departing from the Guideline range, *id.* at 955, the same factor may properly influence a district court's determination of a specific sentence within the prescribed range:

> "Because the determination of a sentence *within* the Guideline range does not require deviation from the Guidelines, the information a district court may consider in assessing sentence is necessarily quite broad: the court may consider any relevant information that the Sentencing Guidelines do not expressly exclude from consideration." *Id.*

The same analysis applies to a sentence outside the Guideline range

11

from which the district court had a valid basis for downwardly departing. In both circumstances, because there is no express limitation on the sentencing court's discretion, it is virtually complete, and the sentence is unreviewable unless otherwise in violation of federal statutory or constitutional law.[5]

We thus disagree with the Fourth Circuit's decision in *Hall*. In so doing, we side with the other Circuits that have considered this question in similar contexts. *See United States v. Lucas*, 17 F.3d 596, 600 (2d Cir. 1994) (holding that, although it is improper to depart on the basis of a hypothetical state sentence, the same factor can inform the district court's "broad discretion . . . in determining the extent of a departure based on other grounds"); *United States v. Newby*, 11 F.3d 1143, 1149-50 (3d Cir. 1993) (holding that a district court could consider the sentence of a codefendant in determining the defendant's specific sentence within the Guideline range), *cert. denied*, 115 S.Ct. 111 (1994); *United States v. Stanton*, 975 F.2d 479, 481-82 (8th Cir. 1992) (same), *cert. denied*, 113 S.Ct. 1331 (1993); *United States v. Duarte*, 901 F.2d 1498, 1499 (9th Cir. 1990) (holding that a district court may

---

[5]     Defendants also argue that the district court improperly relied, in part, on the following two factors in deciding not to sentence them to the extent recommended by the district court: (1) that the Defendants may seek further Rule 35 downward departure recommendations for their possible future assistance, and (2) that the monetary remuneration Defendants received for their cooperation amounted to double compensation for their assistance. For the same reasons stated in the opinion, even if these factors do not form a valid basis for departing from a Guideline range, the district court was within its discretion to consider these factors in determining the extent of the downward departures. We therefore need not discuss these points separately.

consider a defendant's character in determining a specific sentence within the Guideline range).

## Conclusion

Because the sentences imposed here were not in violation of law, they are therefore

AFFIRMED.