700 So.2d 560 (1997)
Lawrence LUCAS
v.
TETRA TECHNOLOGIES, INC., et al.
No. 97-C-1195.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 1997.
*561 Nicholas S. Morphis, David P. Gotnar, Nicholas S. Morphis & Associates, APLC, New Orleans, for Plaintiff/Respondent.
Craig W. Marks, Briney & Foret, Lafayette, for Defendant/Relator.
Before SCHOTT C.J., and BARRY and KLEES, JJ.
BARRY, Judge.
Tetra Technologies, Inc. seeks review of the trial court's denial of its motion for summary judgment. We grant certiorari and affirm.

Facts
Tetra Technologies is an oilfield service company which contracts with various oil and oilfield related companies to provide filtration services. The workers use a filtration unit on location to filter completion fluids.
Tetra hired Lawrence Lucas as a filtration trainee on November 27, 1995. On December 22, 1995 Tetra assigned Lucas to a filtration job for Samedan aboard the ROWAN HOUSTON, a jack-up rig which was jacked up over a small unmanned platform. On December 28, 1995 Lucas was allegedly injured.
Lucas filed suit against Tetra and alleged that he is a seaman entitled to damages under the Jones Act. Tetra's motion for summary judgment contested Lucas' alleged seaman status, arguing that Lucas was not permanently assigned to the ROWAN HOUSTON and did not perform a substantial part of his work on that vessel.
Tetra maintained that Lucas was aboard the ROWAN HOUSTON six days of his 31 days of employment (about 19% of the time). Lucas responded that the job aboard the ROWAN HOUSTON must be viewed in context of his offshore assignments and that he was aboard the ROWAN HOUSTON 53% of the time. Lucas does not explain how he arrived at 53%, but appears to be based on being offshore 13 days of the month and seven days aboard the ROWAN HOUSTON. He asserted summary judgment was improper due to that issue of fact.
We conclude that neither party properly analyzed Lucas' status. Because a question of fact remains concerning the nature of Lucas' employment as a filtration operator trainee and his relationship to the ROWAN HOUSTON or a fleet of vessels, summary judgment was properly denied.

Seaman Status
Offshore Co. v. Robison, 266 F.2d 769 (5th Cir.1959) established the test for seaman status under the Jones Act.
(T)here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel ... or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance *562 during its movement or during anchorage for its future trips.
Id. at 779.
Whether a seaman who works on several vessels may recover under the Jones Act has created a large body of jurisprudence with inconsistent answers. In Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240 (5th Cir.1983), cert. den. 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984), the district court granted summary judgment for the defendants, holding that the plaintiffs were not seaman because they were not assigned to a specific vessel or group of vessels. The Fifth Circuit reversed and held that assignment to numerous vessels which do not share common ownership or control does not preclude a seaman from recovery under the Jones Act, although it is relevant to that determination. The Court held that the character and extent of an employee's service aboard vessels, whether one or several, affects the resolution of seaman status. Bertrand, 700 F.2d at 246. The relationship creating seaman status must be substantial in point of time and work, not merely sporadic. Id. Considering that plaintiffs were anchorhandlers whose duties were traditionally maritime, that their tour of duty was coextensive with the mission of the vessel, and that all of their work was closely associated with the function of the vessel, the Court remanded for the jury to determine the plaintiffs' seaman status. Id. at 247-248.
Following Bertrand's lead, the Fifth Circuit affirmed the seaman status of an offshore oilfield diver who worked on various vessels with no common ownership or control. Wallace v. Oceaneering International, 727 F.2d 427 (5th Cir.1984).
It is the inherently maritime nature of the tasks performed and perils faced by (the plaintiff's) profession, and not the fortuity of his tenure on the vessel from which he makes the particular dive on which he was injured, that makes (the plaintiff) a seaman.
Id. at 436. Wallace distinguished cases which denied seaman status to employees who worked on many vessels without common ownership or control based on the primary duties performed. In cases denying seaman status, the employee's primary duties were either land-based or on fixed platforms (which are considered artificial islands). Id. at 433. In Wallace the diver's duties were maritime. Compare Buras v. Commercial Testing & Engineering Co., 736 F.2d 307 (5th Cir.1984), which denied seaman status to a worker based on the "totality of the circumstances" (the employee's duties were primarily land-based, he was randomly assigned to vessels which did not constitute an identifiable fleet, his contact was limited and he did not eat or sleep on the vessels).
In Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067 (5th Cir.1986), the Court en banc considered what duration of an employee's assignment is necessary to support submitting to the jury the question whether the employee performed a "substantial part" of his duties aboard a vessel or fleet of vessels under Robison. In defining the issue, the Court stated:
By fleet we mean an identifiable group of vessels acting together or under one control. We reject the notion that fleet of vessels in this context means any group of vessels an employee happens to work aboard. Unless fleet is given its ordinary meaning, the fundamental distinction between members of a crew and transitory maritime workers such as longshoremen is totally obliterated.
Id. at 1074. The plaintiff in Barrett was a welder's helper, and his duties were not classically maritime. The Court held that if the land-based employee's duties require him to split his time between the vessel(s) and land (or platform), his status as a crew member is determined "in the context of his entire employment." Because the plaintiff spent only twenty to thirty percent of his one year employment on vessels, he was not a seaman. Barrett specified that it was not deciding "whether the same principle governs the crewmember status of the maritime worker who spends virtually all of his time performing traditional seaman's dutieswork closely related to the movement of vesselsbut does his work on short voyages aboard a large number of vessels." Id. at 1075 n. 13.
The cited cases, from Wallace through Barrett, reaffirm that the circumstances *563 of the worker's duties must be considered in their entirety, that no single factor is determinative, and that an employee with traditionally maritime duties should not be denied seaman status based on lack of common control over the multiple vessels upon which the employee works. However, in apparent contrast to Wallace, the Fifth Circuit held that a compulsory river pilot who performs traditional seaman's work on a large number of unconnected vessels does not satisfy the "vessel connection prong" of the Robison test for seaman status. Bach v. Trident Steamship Co., Inc., 920 F.2d 322 (5th Cir.1991), vacated 500 U.S. 949, 111 S.Ct. 2253, 114 L.Ed.2d 706, reinstated 947 F.2d 1290 (5th Cir.1991), cert den. 504 U.S. 931, 112 S.Ct. 1996, 118 L.Ed.2d 592 (1992). Bach cited Barrett to define "fleet," but did not cite Wallace. Judge Brown's dissent focused on the nature of the pilot's duties.
Hall v. Professional Divers of New Orleans, 865 F.Supp. 363 (E.D.La.1994) refused to follow Bach, noting "When faced with conflicting panel opinions, the earlier controls the decision." Id. at 365. That is because one panel of the Fifth Circuit may not overrule another. Smith v. Penrod Drilling Corp., 960 F.2d 456, 459 n. 2. Hall denied the defendant's motion for summary judgment which argued that plaintiff, a commercial diver, was not a seaman because he was not attached to a vessel or identifiable fleet of vessels.
Although Bach cited Barrett's en banc definition of "fleet," Barrett did not address the status of a maritime worker who works aboard various unconnected vessels, and Bach did not overrule Wallace. Therefore, it appears that the totality of circumstances continues to be determinative of the employee's seaman status.

Circumstances of Lucas' Employment
Attached to Tetra's motion for summary judgment is the affidavit of District Manager Wayne Peddy. Lucas was hired as a filtration operator and was a trainee when the alleged accident occurred. According to Peddy's affidavit, Lucas worked on land in Tetra's yard from November 27, 1995 until December 2, 1995, when he went offshore to work on a platform rig. From December 8 through December 21, 1995 Lucas worked in "the Houma yard" cleaning equipment and receiving training. He went aboard the ROWAN HOUSTON on December 22, 1995.
Peddy stated that Tetra's filtration operators work at various locations according to customer demand and remain on the job site for the duration of the particular job; Tetra works for various companies, assigns work by random, and assignment to a particular job is purely fortuitous; Lucas was not hired to work exclusively for Samedan or aboard the ROWAN HOUSTON; Lucas' work did not extend for the duration of the ROWAN HOUSTON's mission, rather, for the duration of the filtration job.
The application does not contain evidence detailing the duties of a filtration operator and association to the vessels upon which the operator works. The evidence provides no details of the duties performed by Lucas while he was in "the Houma yard" and there are no work records upon which this Court can base a comparison of hours worked at each site. Those facts are relevant to determine whether Lucas satisfies the Robison test. Summary judgment was properly denied.
WRIT GRANTED; AFFIRMED.
SCHOTT, Chief Judge, concurring in the result.
With all due respect to my colleagues the lengthy discussion in the majority opinion about decisions of the United States Court of Appeals and even district courts, while interesting, is unnecessary for a resolution of this case. Even in the absence of a pertinent decision of the United States Supreme Court the decisions of inferior federal courts are not authoritative, but persuasive at best. In the present case, we have the benefit of a United States Supreme Court case which alone is controlling, but which is not cited in the majority opinion.
In Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995), the court provided an extensive discussion of the history of the Jones Act and the conflicts which have prevailed among the inferior federal *564 courts over the issue of seaman's status under the Act. The court concluded with the instruction to the district court to charge the jury that:
... "employment related connection to a vessel in navigation" necessary to qualify as a seaman under the Jones Act, ... comprises two basic elements: the worker's duties must contribute to the function of the vessel or to the accomplishment of its mission, and the worker must have a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in terms of both its duration and its nature. As to the latter point, the court should emphasize that the Jones Act was intended to protect sea-based maritime workers, who owe their allegiance to a vessel, and not land-based employees, who do not.
Id. at 376, 115 S.Ct. at 2194.
In the course of the opinion the court recognized that:
... where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict.
Id. at 371, 115 S.Ct. at 2191.
In the Chandris case the court recognized with some apparent degree of approval the "rule of thumb" adopted by the Fifth Circuit Court of Appeals that a worker who spends less than 30% of his time in the service of a vessel in navigation should not qualify as a Jones Act seaman. But the court emphasized that this was no more than a "guideline" departure from which would "certainly be justified in appropriate cases." Id. at page 371, 115 S.Ct. at page 2191.
In the present case, plaintiff contends he spent 53% of his time on vessels which Tetra contends it was only 19% of his time. It is not clear that plaintiff's first offshore hitch was on a vessel, but it is not clear also how much time plaintiff would have remained on the ROWAN HOUSTON had he not been injured.
The record before us does not provide the "undisputed facts" as to plaintiff's status to justify taking the question away from the trier of fact. A fair reading of Chandris compels the conclusion that summary judgment is not warranted at this stage of the proceedings.