GARWOOD, Circuit Judge,
dissenting in part:
I respectfully dissent from the holding that the extent of the departure was excessive. In my view, the majority pays inadequate deference to the district court’s role as arbiter of the facts and to its “almost complete discretion” in fixing the extent of a departure.[1]
The majority’s primary emphasis seems to be on its conclusion that Harris is a bigoted Caucasian prejudiced against Mexicans, a conclusion which can reasonably be drawn from three different sets of remarks by Harris (as described in the majority’s footnote 3). However, the majority concedes that “it was not charged or proved that his actions were driven by ethnic animus” (emphasis added), and it is clear to me that the district court considered and rejected any such hypothesis. The court stated, obviously in rejection of the Government’s argument that Harris’s racial animus played a role in the offense, in relevant part as follows:
“All attempts to stop this tearing up the back of the car were unsuccessful, and then Mr. Harris did, at that time, commit the crime with which he stands convicted, he hit him in the head with a police baton ... it was a back-hand blow that did-was a result of disruptive behavior by the victim. It was obviously provoked. The Government argues in its brief — -I think it’s preposterous to argue that Mr. Harris had the intent and the plan to start beating people up before he ever went over to the house. It’s obvious that he did not hit anybody until after the fourth trip and the victim started trying to kick out the back of the car. So it’s obvious to the Court that these acts by the victim were inescapably provocation of what happened to him by Mr. Harris- [Lopez] was trying to harm himself and to kick out the back of the car. Mr. Harris lost his temper. He shouldn’t have done it, but he did not do something that was likely to injure him severely or kill him.” (emphasis added)
Moreover, there is no evidence that Harris (who had been in law enforcement over twenty years) on any other occasion ever took or attempted any ethnic, racial or other discriminatory action in either an official or a private capacity. In these circumstances, since the district court plainly concluded, based on adequate evidence, that the offense behavior arose solely because Harris “lost his temper” as a result of Lopez’s provocation, and did not arise from racial animus, further consideration of Harris’s ethnic prejudice was not required and the evidence of this does not justify the conclusion that the extent of the departure constituted an abuse of the district court’s discretion.[2]
The other major underpinning of the majority opinion on the extent of departure issue is that factors (a), (c), (d) and (e) of Guidelines section 5K2.10 cut against, *884 not in favor of, a large downward departure. But, these factors simply are not relevant-and do not speak to-a situation, such as that here, where the valid decision to depart is taken on the basis that the victim’s wrongful conduct was provocative of (and provoked) the offense behavior for reasons unrelated to any physical danger (actual or reasonably perceived) thereby posed to the person of the defendant (or another). The sentencing court should obviously consider the extent to which the offense behavior is disproportionate to the provocation.[3] Plainly the court did so here. It found that the offense behavior was that Harris “reached into the car and hit him [in the head] with it [the baton] back-handed,” “using [his] forearm;” that Harris “didn’t raise the baton over his head and come down on him;” that “there was not very much damage done to this victim at all;” and that Harris “did not do something that was likely to injure him [Lopez] severely.” In other words, while the force used by Harris was excessive it was not so to a large extent or degree; nor was there significant harm to the victim.
As to the provocation, the majority faults the district court for considering in that regard the continuation of the noisy, raucous party (at least partly going on in the carport and front yard of the house) after three prior requests by Harris, as a police officer, to keep it quiet and warning of arrest if that was not done. Clearly this was relevant to Harris’s state of mind as being “provoked.” Moreover, Lopez admittedly was at the party and drank alcoholic beverages there and he was con-cededly very drunk when the officers arrived the fourth time. That is not to say, and the district court did not say, that Lopez would have sufficiently engaged in “wrongful conduct” for purposes of section 5K2.10 had he behaved after being placed in Harris’s car. But he did not. He started wildly kicking at the windows and the interior of the car, thrashing about and the like, and persisted in doing so despite efforts to stop him. I can see no impropriety in considering the entire course of conduct in respect to the matter of provocation under section 5K2.10. Certainly that is a matter within the district court’s discretion. Any other approach would be wholly unrealistic.
Moreover, the district court could properly conclude that: after putting Lopez in his car, Harris walked away and only returned when Lopez began his violent kicking and thrashing about; on returning to the car Harris opened the door, Lopez kicked at Harris, Harris told Lopez to stop kicking him, and Harris then struck Lopez in the shins with the baton; Lopez apparently stopped kicking and Harris closed the door and walked away; but Lopez then resumed thrashing about the car and started banging his head against the plexiglass divider; Harris then again returned to the car, opened the door and struck Lopez with the baton, apparently first on the legs[4] and, as Lopez continued to thrash about, then on the head (back-handed).[5]
The permissible view of the evidence, taken by the district court, can be summa *885 rized as follows: that Harris, having tried to stop Lopez’s violent kicking and banging about in the car (which was clearly a danger to both the car and Lopez) by hitting him in the legs with his baton in a manner which was not illegal or excessive, and having done so again when, after Harris closed the door, Lopez recommenced that behavior, Harris simply lost his temper, obviously frayed by the entire sequence of events that evening, and crossed the sometimes cloudy or wavering line between reasonable and excessive force by striking Lopez in the head with a backhanded movement from within the car, not a hard swing or blow nor one likely to injure Lopez severely, which resulted in no serious injury nor very much damage to Lopez.
The point of this dissent is not that the writer would-or would not-view the evidence just as did the district court, or draw the same inferences from it, or, if the writer had elected to depart, would-or would not-in the exercise of discretion depart to the extent the district court'did. The point is, rather, that we should view the record facts before us in the light most favorable to the district court’s sentencing decision, except as one can properly say that such a view would be clearly erroneous, and, that we should determine only whether, on the basis of such facts, the extent of the departure can fairly be characterized as an abuse of the district court’s “almost complete discretion.” On the facts so viewed I can find no such abuse of discretion.[6]
*886 Accordingly, I dissent from the majority’s holding as to the extent of departure.

. United States v. Alvarez, 51 F.3d 36, 41 (5th Cir.1995). See also, e.g., United States v. Cooper, 274 F.3d 230, 248 (5th Cir.2001); United States v. Hashimoto, 193 F.3d 840, 843 (5th Cir.1999).

. Of course, that the offense for which a defendant is sentenced was motivated by racial animus is generally a proper factor to consider in sentencing at a higher end of an otherwise permissible range (or as a factor enhanc *884 ing the range), Wisconsin v. Mitchell, 508 U.S. 476, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993), "[b]ut it is equally true that a defendant’s abstract beliefs, however obnoxious to most people, may not be taken into consideration by a sentencing judge.” Id. at 2200.

.It will almost always be somewhat disproportionate to the provocation in that sentencing only deals with provocation which does not legally excuse or justify the offense.

. The district court plainly did not, and under the evidence was not required to, find that any of the blows to the shins or legs constituted excessive or illegal force or the offense behavior.

. The majority suggests (its note 10) that Harris knew other officers were procuring an alternative, nonviolent method of restraining Lopez. The only evidence in this regard is *885 the testimony of Sheriff’s Officer Stacy that sometime after Lopez started kicking in the car, he [Stacy] commented "he [Lopez] could possibly hurt himself or kick a window out of the car” and that "I informed the other officers that I had a hobble ... in the [Stacy’s] car” and that he then "proceeded back to my car to get a hobble.” Stacy further stated that when he made the comment about having a hobble in his car, Harris was standing near Harris’s car and "was close enough to hear" Stacy. Just how long it took Stacy to return from his hobble trip is not clear. It appears that when Stacy returned Harris had for the second time opened the door and commenced striking Lopez. Stacy never testified that Harris or any other person present ever did or said anything indicating that they heard what Stacy had said about the hobble or ever knew he had one, nor does any other evidence so indicate. None of the other witnesses mentioned anything about a "hobble” (or similar device) or that Stacy had said he was going to get a restraining device. When Flynt was asked what Harris could have done to restrain Lopez, he replied "you can put seatbelts on them, restrain their feet;” but he did not mention that Stacy had, or was going to get, a restraining device. Trimm unsuccessfully attempted to restrain Lopez with mace (Lopez kicked him in the groin).
I also note that there is evidence of prior "bad blood” between Harris and some of the sheriff’s officers, and the district court commented on this at sentencing stating "they testified in such a way that it appears to the Court that there was some disagreements they had with this defendant before.”

. I observe in passing that the majority seems to criticize the district court for not mentioning at sentencing that, as described in the PSR, Harris in 1975 had pleaded guilty to telephone harassment (no particulars being stated), the sentence for which was a $25 fine; that in respect to Harris’s February 1980 divorce the "[c]ourt records ... reflect [just how, whether in the pleadings or judgment or otherwise, is not stated], that the defendant was guilty of cruel and inhuman treatment during the marriage;” that in Harris's June 1973 divorce, the February 1973 "Bill for Divorce” (clearly referring to the wife's pleading initiating the divorce action, not to the "Final Decree of Divorce”) "reflects” various bad treatment of the wife by Harris including that he “habitually threatened her with violence and struck and beat her on many occasions;” and that "[r]ecords of the Belmont, Mississippi, Police Department reflect the defendant was charged with disturbance or assault, but the charge was dropped by the plaintiff in January 1993” and there “was no information regarding details” of the matter. The district court can be presumed to be aware of these items in the PSR, and surely did not abuse its discretion in deeming them *886 of insufficient importance to warrant express mention by it at sentencing.