IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-20622
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

OSCAR CHAVEZ; ARTURO RODRIGUEZ GUERRA; MIGUEL PEREZ LOPEZ

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Texas
_____

August 4, 1997

Before KING, DAVIS, and DEMOSS, Circuit Judges.

PER CURIAM:

Oscar Chavez, Arturo Rodriguez-Guerra, and Miguel Perez-Lopez appeal their convictions for conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846, and for aiding and abetting the possession of marijuana with intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). Miguel Perez-Lopez also appeals his conviction for using and carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c). Finally, Perez appeals an increase in his sentence for lying to the court during his sentencing hearing. Finding no error, we

1

affirm the judgments of conviction and sentences.

## I. BACKGROUND

Oscar Chavez ("Chavez"), Arturo Rodriguez-Guerra ("Rodriguez"), and Miguel Perez-Lopez ("Perez") were charged by indictment with conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846, and with aiding and abetting the possession of marijuana with intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). Perez was also charged with using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

The district court denied the defendants' motions for judgment of acquittal at the close of the government's case-in-chief and again at the close of the evidence, and the jury convicted each of the defendants as charged. Chavez was sentenced to 63 months confinement and a five-year term of supervised release, and was assessed a $12,500 fine and a $100 special assessment. Rodriguez was sentenced to 120 months confinement and a five-year term of supervised release, and was assessed a $12,500 fine and a $100 special assessment. Perez was sentenced to 78 months confinement on the drug counts, followed by 60 months confinement on the firearm count. He was additionally sentenced to a five-year term of supervised release, followed by a three-year term of supervised release, and was assessed a fine of $12,500 and a special assessment of $100.

The events leading to the indictment began in August 1995

2

when Donato "Rico" Chavez, a paid informant for various law enforcement agencies, contacted DEA agents Russell Reina and Wendell Campbell and offered to provide information on alleged drug dealer Oscar Chavez. The agents agreed to arrange a deal for 400 pounds of marijuana. Rico contacted Chavez and set up the purchase.

On September 27, 1995, Rico and Agent Reina, acting undercover and driving separate vehicles, met with the defendants at a restaurant. Chavez told Rico that Rodriguez was his friend and that Rodriguez had the "stuff." Chavez asked Rico if he had the money, and Rico replied that it was in Reina's truck. Rico, Chavez, and Rodriguez approached the passenger side of Reina's pickup, where Reina displayed a bag of cash through the open passenger window.

Rico gave Chavez the keys to the rented van that Rico had driven to the site. Chavez handed the keys to Rodriguez, who in turn handed them to a third person. Reina identified the third person as Perez, but Rico was certain it was not. The third person, identified as Perez by an agent on surveillance, departed in the van. Chavez then suggested that the rest of them leave the area. Rico, Chavez, and Rodriguez drove to a nearby Burger King, followed by Reina in the pickup truck. Reina claimed that Rodriguez drove in a manner that indicated he was attempting to avoid surveillance, although Rico testified that there was nothing unusual about their route.

Shortly after Rico, Chavez, Rodriguez, and Reina returned to

the original restaurant, the van pulled into the parking lot.
Reina observed a bulky package in the back seat of the van and
gave the arrest signal. All three defendants were arrested.
During the course of the arrest, Perez pulled a loaded firearm
from his waistband, but threw it aside when overpowered by a
police officer.

## II. DISCUSSION

*A. Sufficiency of the Evidence to Support a Finding of*
*Predisposition Against Chavez*

Chavez contends that the district court erred in failing to
grant his motions for judgment of acquittal because there was
insufficient evidence to support a finding of predisposition
against him. He argues that he properly raised the defense of
entrapment at trial and the government failed to meet its burden
of proving beyond a reasonable doubt that he was predisposed to
commit the charged drug offense.

"When the government . . . has induced an individual to
break the law, and the defense of entrapment is at issue, the
prosecution must prove beyond a reasonable doubt that the
defendant was inclined to commit the criminal act even before he
was approached by government agents." United States v. Byrd, 31
F.3d 1329, 1334-35 (5th Cir. 1994)(citing Jacobson v. United
States, 503 U.S. 540, 548-49 (1992)), cert. denied, 514 U.S. 1052
(1995). Using a sufficiency of the evidence analysis, this court
must accept the facts in the light most favorable to the guilty
verdict and may reverse only if no rational jury could have found

4

predisposition beyond a reasonable doubt.  Id. at 1335.  Many factors may indicate a defendant's predisposition, including "a showing of a defendant's desire for profit, his eagerness to participate in the transaction, his ready response to the government's inducement offer, or his demonstrated knowledge or experience in the criminal activity under investigation."  United States v. Madrigal, 43 F.3d 1367, 1370 (10th Cir. 1994)(internal quotation omitted), cert. denied, 514 U.S. 1089 (1995).

Rico testified that when he first met Chavez through Rico's friend Santos, Santos purchased marijuana from Chavez. Furthermore, Chavez readily agreed to arrange a drug deal when Rico told him he had a buyer, and Chavez demonstrated knowledge of his role as a broker during the drug transaction.  A jury could reasonably infer from this evidence that Chavez was predisposed to commit the offense.

*B. Fifteen-Year-Old Conviction*

Rodriguez argues that the district court abused its discretion in permitting the government to introduce his 1979 conviction for conspiracy to possess with intent to distribute cocaine.  Rodriguez contends that the prior conviction is so remote that its prejudicial value outweighs its probative value.

Extrinsic evidence is properly admitted under Federal Rule of Evidence 404(b)[1] only if it is relevant to an issue other than

---

[1]Rule 404(b) provides in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, [or] intent . . . .

the defendant's character and its probative value is not substantially outweighed by the danger of unfair prejudice. United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978), cert. denied, 440 U.S. 920 (1979). We review the district court's ruling under Rules 403[2] and 404(b) for abuse of discretion. United States v. Gadison, 8 F.3d 186, 192 (5th Cir. 1993).

The admission of extrinsic evidence is permissible under Rule 404(b) when a defendant places his intent at issue in a drug conspiracy case by pleading not guilty. United States v. Wilwright, 56 F.3d 586, 589 (5th Cir.), cert. denied, 116 S. Ct. 345 (1995). Although the temporal remoteness of extrinsic evidence introduced to show intent weakens its probative value, the age of a prior conviction has never been held to be a per se bar to its use under Rule 404. See United States v. Broussard, 80 F.3d 1025, 1040 (5th Cir.), cert. denied, 117 S. Ct. 264 (1996). Instead, we apply the test set forth in Beechum.

This court stated in Beechum that "[t]he task for the court in its ascertainment of probative value and unfair prejudice under rule 403 calls for a common sense assessment of all the circumstances surrounding the extrinsic offense." 582 F.2d at 914. The probative value of extrinsic evidence is not an absolute, but must be determined with regard to various factors,

---

[2]Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

6

such as the extent to which the defendant's unlawful intent is established by other evidence, the overall similarity of the extrinsic and charged offenses, and the amount of time that separates the extrinsic and charged offenses. Id. at 914-15.

Applying the Beechum test, the district court found:

> Well, this is probative to show that [Rodriguez] wasn't merely present, that he had knowledge and intent.
>
> . . .
>
> In this case, the evidence of the prior conviction is relevant. It involves the same crime. Even though it's an old conviction, it is for conspiracy to possess with intent to distribute cocaine. . . .
>
> I think the admission of this prior conviction makes it more likely than not that the jury will find that the defendant was not a mere spectator, but that he had knowledge and intent to possess with intent to distribute.
>
> The second criteria is whether the relevance is substantially outweighed by the prejudice to the defendant. And it's not mere prejudice in the sense that he might be convicted. It's undue or unfair prejudice.
>
> I conclude that relevance in this case is not substantially outweighed by the prejudice to the defendant where the other evidence of the defendant's guilt is either circumstantial or is not strong in the sense that the only direct evidence of Mr. Rodriguez Guerra's involvement is an alleged statement made by Co-defendant Oscar Chavez to Rico Chavez, the confidential informant, whose credibility has been probed and will, no doubt, be subjected to argument by defense counsel.
>
> So, I conclude that, in this case, the relevance to this -- of this conviction, given the lack of other evidence of Mr. Rodriguez Guerra's intent, is not substantially outweighed by the prejudice to him from admissibility of the conviction.

After admitting the prior conviction into evidence, the

district court instructed the jury that they were to consider the evidence of the "prior act . . . which was committed many years before the offense for which he is charged in this case" for the "very limited purpose" of "determining whether Mr. Rodriguez Guerra had the state of mind or intent necessary to commit the crimes against him charge in the indictment in this case."

The district court considered each of the factors set out in Beechum.  In light of the similarity of the offenses and the paucity of other evidence of intent, the court determined that the probative value of the prior conviction, though weakened by its age, was not substantially outweighed by any prejudicial effect.  We cannot say that the district court abused its discretion in admitting the evidence of the 15-year-old prior conviction.

*C. Sufficiency of the Evidence to Support Rodriguez's Convictions*

"A conviction must be allowed to stand if, after viewing the evidence in the light most favorable to the prosecution, the reviewing court finds that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Sotelo, 97 F.3d 782, 789 (5th Cir.), cert. denied, 117 S. Ct. 620 (1996).  The essential elements of a conspiracy under 21 U.S.C. § 846 are (1) an agreement between two or more persons to violate the narcotics laws, (2) a defendant's knowledge of the agreement, and (3) his voluntary participation in that agreement.  United States v. Misher, 99 F.3d 664, 667 (5th Cir. 1996).  An agreement between coconspirators need not be

8

proved by direct evidence, but may be inferred from a concert of action. United States v. Alix, 86 F.3d 429, 436 (5th Cir. 1996). A defendant's presence and association with other members of the conspiracy, when supported by other evidence, may be used to support a finding of conspiracy. Misher, 99 F.3d at 668. To prove aiding and abetting, the government must show that the defendant (1) associated with a criminal venture, (2) participated in the venture, and (3) acted in some way to make the venture succeed. United States v. Quiroz-Hernandez, 48 F.3d 858, 871 (5th Cir. 1995). "The evidence supporting a conspiracy conviction typically supports an aiding and abetting conviction." Id.

Viewed in the light most favorable to the prosecution, the evidence sufficiently shows a concert of action among Chavez, Rodriguez, and Perez to support a finding of an agreement to possess marijuana with intent to distribute. Chavez and Rodriguez were waiting together at the restaurant when Rico and Reina first arrived. Chavez identified Rodriguez as the person with the marijuana and later commented to Rico that he trusted Rodriguez. Rodriguez and Chavez both approached the pickup to view the cash, left together when the van departed, and then returned together when the loaded van arrived.

*D. Two-Level Increase in Rodriguez's Offense Level*

Rodriguez objected at sentencing to a two-level increase of his base offense level pursuant to § 2D1.1(b)(1) of the Sentencing Guidelines, which provides for such an increase "[i]f

9

a dangerous weapon (including a firearm) was possessed."  The application notes to this section state: "The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons.  The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

We have held that "one coconspirator may ordinarily be assessed a § 2D1.1(b)(1) increase in view of another coconspirator's possession of a firearm during the drug conspiracy so long as the use of the weapon was reasonably foreseeable."  United States v. Mergerson, 4 F.3d 337, 350 (5th Cir. 1993), cert. denied, 510 U.S. 1198 (1994).  "A court may ordinarily infer that a defendant should have foreseen a codefendant's possession of a dangerous weapon, such as a firearm, if the government demonstrates that another participant knowingly possessed a weapon while he and the defendant committed the offense."  United States v. Gaytan, 74 F.3d 545, 559 (5th Cir.)(internal quotations omitted), cert. denied, 117 S. Ct. 77 (1996).  The district court's decision to apply § 2D1.1(b)(1) is essentially a factual determination reviewable under the clearly erroneous standard.  United States v. Rodriquez, 62 F.3d 723, 724 (5th Cir. 1995).  The district court's determination that possession of the weapon by a coconspirator was foreseeable is also a factual finding reviewable for clear error.  Gaytan, 74 F.3d at 558-59.

The district court found that Rodriguez was convicted of a

10

conspiracy to possess with intent to distribute marijuana, that his codefendant Perez possessed a pistol during the conspiracy, that the pistol was directly connected to the offense because it was used to guard the marijuana, and that Perez pulled the weapon from his waistband when approached by law enforcement officers. On the basis of these findings, the district court inferred that Rodriguez should have reasonably foreseen that Perez had a gun. The district court did not clearly err in increasing Rodriguez's offense level two levels on the basis of § 2D1.1(b)(1).

*E. The 924(c) Jury Charge*

Perez argues that the district court impermissibly informed the jury that his conduct constituted carrying a firearm during a drug trafficking offense, thereby violating his Sixth Amendment right to a jury determination as well as the due process requirement that the government prove each element of the offense beyond a reasonable doubt. See United States v. Johnson, 718 F.2d 1317, 1320-21 (5th Cir. 1983)(en banc). Because Perez did not object to the court's jury charge on the ground he now urges on appeal, we review for plain error. FED. R. CRIM. P. 52(b). "Plain error occurs only when the instruction, considered as a whole, was so clearly erroneous as to result in the likelihood of a grave miscarriage of justice." United States v. Inocencio, 40 F.3d 716, 729 (5th Cir. 1994).

In its instructions to the jury in relation to the § 924(c) charge, the district court used general examples to explain the difference between "use" and "carry":

11

> A firearm can be <u>carried</u> without being used, e.g., if an offender keeps a gun hidden in his clothing while engaged in a drug transaction.  A firearm can be <u>used</u> without being carried, e.g., when an offender has a gun on display during a transaction.

Perez argues that the first example is a "virtual recitation of the testimony against" him and that it therefore improperly directed a verdict of guilty on an element of the offense.

The jury instruction at issue is a correct statement of the law and did not impermissibly address the evidence presented to the jury at trial.  <u>See</u> <u>United States v. Lennon</u>, 751 F.2d 737, 742-43 (5th Cir.), <u>cert. denied</u>, 471 U.S. 1100 (1985).  The challenged jury instruction is not plainly erroneous.

*F. Increase of Perez's Sentence*

Perez argues that the district court added 15 months to his sentence because the court believed that he lied about whether his attorney had reviewed the presentence report with him, when in fact Perez was merely confused as a result of his limited English proficiency and illiteracy.  Perez contends that penalizing him for his confusion violated his right to due process.

At the sentencing hearing, the district court engaged in a lengthy exchange with Perez regarding whether or not he had read the presentence report or had it explained to him in Spanish.  Perez's responses changed throughout the course of the discussion and differed from those of his attorney.  As a result, the district court made a finding that Perez was lying.  After making further findings and adopting the presentence report, the

12

district court calculated the guideline range to be between 63 and 78 months.  The district court then imposed the maximum guideline sentence because Perez had lied in court.

In determining a sentence within the Guideline range, the district court may consider a broad range of information.  United States v. Alvarez, 51 F.3d 36, 41 (5th Cir. 1995).  In fact, the district court may consider "any relevant information that the Sentencing Guidelines do not expressly exclude from consideration."  Id. (internal quotation omitted).  A sentencing court's factual findings must be supported by a preponderance of the evidence, and we review such findings for clear error. United States v. McCaskey, 9 F.3d 368, 372 (5th Cir. 1993), cert. denied, 114 S. Ct. 1565 (1994).

In his challenge to his sentence, Perez seems to be invoking "the due process requirement that a defendant be sentenced on the basis of evidence having some minimal indicia of reliability and that the information bear some rational relationship to the court's decision to impose a particular sentence."  United States v. Santiago, 993 F.2d 504, 506-07 (5th Cir. 1993).  The defendant has the burden of demonstrating that the information relied on at sentencing is materially untrue.  Id.  Perez's counsel makes a plausible argument that Perez was simply confused.  From a cold record, however, we are unable to say that the district court clearly erred when it concluded that Perez was lying.  Perez, therefore, has not met the burden of showing that the information relied on by the district court -- that Perez had lied in court -

13

- was materially untrue.  Thus, the district court did not err in increasing Perez's sentence based on its finding that Perez had lied in court.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgments of conviction and the sentences imposed by the district court.