IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-11456

_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

EDDIE DEAN MORRIS,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas
_____

December 19, 1997

Before JOLLY, DAVIS, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal presents issues involving application of the Sentencing Guidelines with respect to aggravated assaults and enhancements for the use of a dangerous weapon. Eddie Dean Morris was convicted for assaulting a federal agent with a deadly weapon (Morris rammed the agent's automobile with his truck), while the agent was engaged in his official duties, in violation of 18 U.S.C. § 111. At sentencing, the district court applied the aggravated assault Guidelines to determine Morris's base offense level and applied an enhancement for his use of a dangerous weapon. The district court also enhanced Morris's sentence for obstructing justice by committing perjury. Morris appeals only his sentence.

He challenges the district court's factual findings that he committed perjury and that he assaulted federal agents with the intent to inflict bodily harm. Morris further contends that, by enhancing his sentence for the use of a dangerous weapon, the district court engaged in impermissible double counting. For the reasons that follow, we affirm.

I

Eddie Dean Morris was wanted for unlawful flight to avoid prosecution for nonpayment of child support. On May 13, 1996, agents of the Federal Bureau of Investigation ("FBI") received information that Morris was in the Alley Cat's Bingo Hall in Dallas, Texas. FBI agents were dispatched to the bingo hall to arrest Morris. They waited outside the bingo hall and watched Morris's vehicle, a Chevrolet Blazer. Eventually, Morris and a female companion left the bingo hall and went to his car. When Morris drove out of the parking lot, the agents followed. They were joined by two marked Dallas police squad cars, who turned on their red emergency lights and followed Morris into the parking lot of a 7-Eleven convenience store. John Skillestad, an FBI agent, also drove into the 7-Eleven parking lot and stopped his vehicle five to ten feet from the right front fender of Morris's Blazer. Notwithstanding, Morris drove off suddenly, taking an immediate left turn out of the parking lot. The agents followed. During a high-speed chase, Morris swerved his Blazer into Agent Skillestad's vehicle, causing the agent to veer off the road into a parking lot

2

and towards a concrete embankment. Agent Skillestad crashed through a tire stop, went over the concrete embankment, and dropped almost three feet to the ground. Uninjured, Agent Skillestad rejoined the chase, which ended with Morris's capture and arrest.

A jury convicted Morris of assaulting a federal agent with a deadly weapon, while the agent was engaged in his official duties, in violation of 18 U.S.C. § 111.[1] At the sentencing hearing that followed, the district court overruled Morris's objections to the presentence report and assigned him an offense level of 26. In arriving at this figure, the district court began with a base offense level of fifteen for an aggravated assault. The court then added a four-level enhancement for otherwise using a dangerous weapon, a three-level enhancement because the assault was motivated by the agent's status as a government official, a two-level enhancement for obstruction of justice, and another two-level enhancement for recklessly creating a substantial risk of death or serious bodily injury in the course of fleeing from a law enforcement officer. The total offense level of 26, combined with

---

[1]The statute provides:

> Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person ... in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.
> Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 111.

Morris's criminal history category of I, yielded a sentencing range of 63 to 78 months. The district court sentenced Morris to a 70-month term of imprisonment, a three-year term of supervised release, and $8,702.38 in restitution. Morris timely filed his notice of appeal, and this appeal followed.

## II

Morris challenges his sentence imposed under the Sentencing Guidelines. This court will uphold the sentence imposed so long as it is the product of a correct application of the Guidelines to factual findings that are not clearly erroneous. United States v. Jackson, 22 F.3d 583, 584 (5th Cir. 1994). Accordingly, "[w]e review factual findings made by a district court for sentencing purposes under the clearly erroneous standard, and review the district court's legal application of the Guidelines *de novo*." United States v. Asibor, 109 F.3d 1023, 1040 (5th Cir. 1997).

## III

### A

Morris first argues that the district court erred in applying U.S.S.G. § 2A2.2, entitled "Aggravated Assault." Morris maintains that the evidence did not support a finding that he intended to do bodily harm to Agent Skillestad. The commentary to section 2A2.2 defines aggravated assault, in relevant part, as "a felonious

assault that involved . . . a dangerous weapon with intent to do bodily harm (*i.e.*, not merely to frighten)." See id., comment, (n.1). Morris does not dispute the characterization of his Blazer as a dangerous weapon under the Guidelines. Thus, the question is whether the district court erred when it found that Morris intended to cause bodily harm when he swerved his Blazer into Agent Skillestad's vehicle.

A number of law enforcement officers testified at trial that Morris intentionally rammed his Blazer into Agent Skillestad's vehicle hard enough to cause it to leave the road. Although Agent Skillestad was not injured, the intent to do bodily harm could be inferred from Morris's conduct. See United States v. Garcia, 34 F.3d 6, 11 (1st Cir. 1994) (the defendant's conduct of driving his car directly at a law enforcement officer supported inference that the defendant intended to cause serious bodily harm). The district court, therefore, did not clearly err in concluding that Morris committed an aggravated assault under the Guidelines and sentencing him accordingly.

B

Morris next argues that, in the event we should find the evidence sufficient to support the conclusion that he used a dangerous weapon with the intent to do bodily harm by ramming Agent Skillestad's automobile, the district court erred when it enhanced his base offense level under section 2A2.2(b)(2)(B) of the Guidelines for "otherwise us[ing]" a dangerous weapon in the

commission of the aggravated assault.[2]  He contends that because his vehicle, ordinarily a nondangerous object, became a dangerous weapon only when he used it to ram Agent Skillestad's car, the enhancement for "otherwise using a dangerous weapon" was based on the identical conduct that justified his sentence for aggravated assault.  Morris maintains, therefore, that he did not otherwise use a dangerous weapon and, further, that applying this enhancement to his conduct resulted in double counting.

In support of his position, Morris points us to the Second Circuit's decision in United States v. Hudson, 972 F.2d 504 (2d Cir. 1992), where the court held that "the Guidelines proscribe impermissible double counting where it is the use of an ordinary object as dangerous weapon that transforms a 'minor' assault into

_____

[2]Sentences involving an assault with a dangerous weapon are subject to the following enhancement scheme:

> (A) If a firearm was discharged, increase by 5 levels;
> (B) if a dangerous weapon (including a firearm) was otherwise used, increase by 4 levels; (C) if a dangerous weapon (including a firearm) was brandished or its use was threatened, increase by 3 levels.

U.S.S.G. § 2A2.2.

The commentary to the "General Application Principles" section of the Guidelines further explains:

> "Otherwise used" with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.

Id. § 1B1.1, comment, (n.1(g)).

6

an 'aggravated' one." Id. at 506. The court reasoned that, were it to hold otherwise, "aggravated assault with a [nondangerous object] will always lead to a three or four-level enhancement, because mere possession of a [nondangerous object] during an assault will not convert an ordinary assault into an aggravated one." Id. at 507.[3]

We find it unnecessary to determine whether the Guidelines recognize a distinction between objects that are "inherently dangerous" weapons and ordinary objects that become dangerous only through their use.[4] Even were we to adopt the Second Circuit's rationale, application of an enhancement for otherwise using a dangerous weapon would not constitute double counting in this case. Assuming a particular use is essential to transform an ordinary object into a dangerous weapon, Morris used his Blazer in two

---

[3]The Second Circuit's position in this respect is at odds with the views of every other circuit that has considered whether the use of an ordinarily nondangerous object during an assault, thereby making the object a dangerous weapon and turning a minor assault into an aggravated one, precludes an enhancement for otherwise using a dangerous weapon in the course of the same assault. See United States v. Johnston, 107 F.3d 200, 211-12 (3d Cir. 1997); United States v. Dunnaway, 88 F.3d 617, 619 (8th Cir. 1996); United States v. Sorenson, 58 F.3d 1154, 1161 (7th Cir. 1995); Garcia, 34 F.3d at 11-12; United States v. Reese, 2 F.3d 870, 896 (9th Cir. 1993); United States v. Williams, 954 F.2d 204, 206-08 (4th Cir. 1992).

[4]The commentary to § 1B1.1 defines a "dangerous weapon" merely as "an instrument *capable of* inflicting death or serious bodily injury." U.S.S.G. § 1B1.1, comment. (n.1(d)) (emphasis added). Many ordinary objects, including automobiles, have the capacity to inflict death or serious bodily injury. The Guidelines simply are not clear whether the use of such objects in a particular way is necessary to classify them as dangerous weapons.

separate ways during the course of this criminal episode.[5]  First, he rammed Agent Skillestad's vehicle.  Second, he engaged federal agents in a reckless, high-speed chase.  By ramming Agent Skillestad's vehicle with his Blazer, Morris clearly rendered the Blazer a dangerous weapon and committed an assault with a dangerous weapon in this case.  Fleeing from law enforcement authorities by driving the Blazer recklessly and at a high rate of speed to escape capture constituted another dangerous, life-threatening use of the vehicle--which already had become a dangerous weapon in the course of this criminal event.  Consequently, this second dangerous use justifies the enhancement for otherwise using a dangerous weapon.  In terms of the Guidelines, it involves further dangerous use of the Blazer that was greater than mere display or possession.  See U.S.S.G. § 1B1.1, comment, (n.1(g)) (defining "otherwise used" to mean conduct less than discharging a firearm, but more than displaying or possessing a dangerous weapon).  Thus, no double counting resulted from application of the Sentencing Guidelines to this set of facts.

---

[5]The degree to which a dangerous weapon is involved in the assault is a "Specific Offense Characteristic" of an aggravated assault under section 2A2.2(b).  The Guidelines provide that, in determining the existence of specific offense characteristics (e.g., whether a dangerous weapon is "otherwise used" during an aggravated assault), the court is to consider "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."  § 1B1.3(a)(1).

Nevertheless, even if application of the enhancement at issue constituted double counting, we have recognized that the sentencing guidelines do not prohibit all double counting. United States v. Box, 50 F.3d 345, 359 (5th Cir.), cert. denied, ___ U.S. ___, 116 S.Ct. 309, 133 L.Ed.2d 213 (1995); United States v. Godfrey, 25 F.3d 263, 264 (5th Cir.), cert. denied, 513 U.S. 965, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994). Rather, double counting is prohibited only if the particular guidelines at issue forbid it. Box, 50 F.3d at 359. Section 2A2.2 does not expressly prohibit the type of double counting alleged by Morris. Accordingly, the district court did not err by applying a four-point enhancement for "otherwise us[ing]" a dangerous weapon in this case.

C

Finally, Morris argues that the district court clearly erred by adding two levels to his base offense level for obstruction of justice. Section 3C1.1 of the Sentencing Guidelines provides for a two-level enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense ...." U.S.S.G. § 3C1.1. If the district court finds that the defendant committed perjury at trial, this enhancement is required. See United States v. Dunnigan, 507 U.S. 87, 98, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993); United States v. Humphrey, 7 F.3d 1186, 1189 (5th Cir. 1993).

Here, the district court found that "Morris was untruthful at trial with respect to material matters in this case." Numerous witnesses had testified that Morris deliberately rammed his Blazer into Agent Skillestad's vehicle. Nonetheless, Morris testified that he did not deliberately swerve his vehicle. Because the record supports the district court's finding that Morris committed perjury, the court's imposition of a two-level enhancement for obstruction of justice was not clearly erroneous.

IV

For the foregoing reasons, the district court's calculation of Morris's sentence is

A F F I R M E D.