IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-40367
_____


UNITED STATES OF AMERICA

                                        Plaintiff - Appellee

        v.

RICARDO FLORES; JULIAN MEDRANO

                                        Defendants - Appellants

_____

Appeals from the United States District Court
for the Southern District of Texas, Laredo Division
No. L-98-CR-608-1
_____

November 26, 2001

Before KING, Chief Judge, and JOLLY and EMILIO M. GARZA, Circuit
Judges.

PER CURIAM:[*]

    Defendants Ricardo Flores and Julian Medrano appeal their

convictions and sentences for violations of 21 U.S.C.

§ 841(a)(1).  For the reasons that follow, we AFFIRM the

defendants' convictions and sentences.

_____

    [*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

## I.  Factual and Procedural History

In July 1997, Border Patrol agents seized 1,143 kilograms of cocaine from a truck driven by Eleazar Eggers.  As a result of Eggers's cooperation after his arrest, agents focused their investigation on Zenon Cantu and Pablo Santos Chapa.  Pursuant to the investigation, agents obtained a search warrant for and conducted a search of Cantu's residence.  During the search, agents seized telephone and address books, ledgers, documents, communication devices, radios, and cellular telephones.  This evidence suggested a cocaine conspiracy and implicated Vicente Alvarado-Valdez, Julian Medrano, and Ricardo Flores.  Cantu and Eggers were indicted for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).  Cantu agreed to cooperate with DEA agents, and as a result of information obtained from Cantu, Flores, Alvarado-Valdez, Chapa, and Medrano were charged on July 21, 1998, with conspiracy to "possess with intent to distribute a Schedule II controlled substance, to wit: a quantity in excess of 5 kilograms of cocaine," also in violation of 21 U.S.C. § 841(a)(1).  The jury trial commenced on October 26, 1998.

Evidence introduced at trial included testimony by Cantu, Flores, and Medrano, as well as documentary evidence and telephone logs seized during the investigation.  The jury returned a guilty verdict for both Flores and Medrano on November

2

13, 1999.  Flores and Medrano were sentenced on March 1, 2000.

The district court sentenced Flores to thirty years of

imprisonment, ten years of supervised release, and a $100 special

assessment.  Medrano received a sentence of twenty-six years of

imprisonment, five years of supervised release, and a $100

special assessment.

On appeal Flores argues (1) that there is insufficient

evidence to support his conviction and (2) that his prison

sentence violates Apprendi v. New Jersey, 530 U.S. 466 (2000).

Medrano argues (1) that there is insufficient evidence to support

conviction, (2) that his prison sentence violates Apprendi,[1] (3)

that the district court improperly admitted unfairly prejudicial

evidence, and (4) that the district court improperly enhanced his

sentence for obstruction of justice.[2]

## II.  Sufficiency of the Evidence

Both Flores and Medrano argue that the evidence presented to

the jury was insufficient to support their convictions.  Neither

Flores nor Medrano moved for a judgment of acquittal at the close

of evidence.  We review, therefore, under the "manifest

---

[1]  Medrano claims that the jury instructions and his
sentence contain two separate Apprendi errors.  Because of the
nature of our Apprendi analysis, we must view those claims as
raising one issue.

[2]  Notably, neither Flores nor Medrano challenges his term
of supervised release.

3

miscarriage of justice" standard. See United States v. Johnson, 87 F.3d 133, 136 (5th Cir. 1996); United States v. McCarty, 36 F.3d 1349, 1358 (5th Cir. 1994). Such a miscarriage of justice can be shown if "there is no evidence of the defendant's guilt," United States v. Villasenor, 236 F.3d 220, 222 (5th Cir. 2000), or "the evidence on a key element of the offense [is] so tenuous that a conviction would be shocking," McCarty, 36 F.3d at 1358 (quoting United States v. Pierre, 958 F.2d 1304, 1310 (5th Cir. 1992) (en banc)).

The elements of a § 841(a)(1) drug conspiracy are (1) an agreement to possess narcotics with the intent to distribute, (2) knowledge of the agreement, and (3) voluntary participation in the agreement. See Unites States v. Fierro, 38 F.3d 761, 768 (5th Cir. 1994). A jury may infer these elements from circumstantial evidence. See United States v. Morgan, 117 F.3d 849, 853 (5th Cir. 1997). Although mere association with conspirators is insufficient to prove knowing participation in an agreement, such association combined with other circumstantial evidence may support a conspiracy conviction. See United States v. Cortinas, 142 F.3d 242, 249 (5th Cir. 1998).

Cantu, the primary witness for the prosecution, testified to the existence of a drug conspiracy and Flores's and Medrano's knowing participation in that conspiracy. Flores and Medrano argue that their convictions cannot rest solely on the uncorroborated testimony of Cantu, a coconspirator who agreed to

4

cooperate with the government. We disagree. A conviction may rest upon the uncorroborated testimony of an accomplice who has entered into a leniency agreement with the government, as long as the testimony is not incredible as a matter of law. See United States v. Posada-Rios, 158 F.3d 832, 861 (5th Cir. 1998). Cantu's testimony was not incredible as a matter of law because it did not "relate[] to facts that [Cantu] could not possibly have observed or to events which could not have occurred under the laws of nature." Id. Furthermore, Cantu's testimony was supported by documentary evidence and phone records. It is the jury's duty to evaluate the credibility of a compensated witness. See United States v. Bermea, 30 F.3d 1539, 1553 (5th Cir. 1994). Because we find sufficient evidence to convict both Flores and Medrano, we will not second-guess the jury's guilty verdicts.

## III. Apprendi Error Analysis

In Apprendi, the Supreme Court established that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. This court has noted that "[t]he decision in Apprendi was specifically limited to facts which increase the penalty beyond the statutory maximum." United States v. Doggett, 230 F.3d 160, 166 (5th Cir. 2000). Medrano and Flores were

prosecuted under 21 U.S.C. § 841(a)(1).  For a § 841(a)(1) violation involving an unspecified drug quantity, § 841(b)(1)(C) establishes the statutory maximum penalty of twenty years of imprisonment.[3]  Under Apprendi, a defendant charged with a § 841(a)(1) violation may not be sentenced beyond the twenty-year statutory maximum unless a drug quantity triggering a higher maximum penalty under § 841(b)(1)(A) or (B) was alleged in the indictment and submitted to a jury to find beyond a reasonable doubt.  See United States v. Keith, 230 F.3d 784, 787 (5th Cir. 2000).

Both Flores and Medrano argue that their sentences, thirty years and twenty-six years respectively, are impermissible under Apprendi.  They contend that because no drug quantity was submitted to the jury to find beyond a reasonable doubt, the district court was not authorized to sentence them beyond the § 841(b)(1)(C) twenty-year statutory maximum.[4]  Under our cases, to establish Apprendi error, Flores and Medrano must show that: (1) their sentences are longer than the applicable statutory maximum penalty and (2) drug quantity was not submitted to the jury to find beyond a reasonable doubt.  See United States v. Slaughter, 238 F.3d 580, 582-83 (5th Cir. 2001) (noting that only

---

[3]  A prior conviction for a felony drug offense raises this statutory maximum penalty to thirty years of imprisonment.  21 U.S.C. § 841(b)(1)(C) (1999).

[4]  Both Flores and Medrano concede that their indictments adequately allege drug quantity.

6

facts which increase the penalty for a crime beyond the statutory maximum must be submitted to the jury to find beyond a reasonable doubt).

A.  Medrano's Sentence

Medrano and Flores were charged in Count One of the indictment with conspiracy to "possess with intent to distribute a Schedule II controlled substance, to-wit: a quantity in excess of 5 kilograms of cocaine."  When giving the jury instructions, the district court read Count One of the indictment and then stated:

> For you to find the Defendant guilty of conspiring to possess with intent to distribute as charged in Count One of the indictment, you must first be convinced that the Government has proved each of the following with respect to the Defendant beyond a reasonable doubt: First, that two or more persons made an agreement to commit the crime of possession with intent to distribute as charged in Count One of the indictment; Second, that the Defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose.

(emphasis added).  Medrano did not object to the adequacy of the jury instructions at trial.  The jury found Medrano guilty, and the district court sentenced him to twenty-six years of imprisonment, six years greater than the maximum allowed under § 841(b)(1)(C).[5]

---

[5]  The twenty year statutory maximum penalty applies to Medrano because he has no prior felony drug convictions.

7

On appeal, Medrano argues that United States v. Clinton, 256 F.3d 311 (5th Cir. 2001), which involved a similar jury instruction that the court found flawed under Apprendi, mandates reversal of his conviction. Because Medrano failed to object to the jury instructions at trial, we review the alleged Apprendi violation for plain error only. See United States v. Johnson, 520 U.S. 461, 469 (1997) (reviewing for plain error when the defendant failed to object to an omission in the jury instructions at trial). This deferential standard of review dictates that before this court can correct an error not raised at trial, there must be (1) an "error," (2) that is "plain," (3) that "affect[s] substantial rights," and (4) that "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (internal citations and quotations omitted).

Assuming arquendo that these facts establish an Apprendi error, it does not amount to plain error under the Johnson-Olano standard. At trial, Cantu testified that Medrano voluntarily transported approximately 840 kilograms of cocaine to New York. Cantu's testimony is supported by documentary evidence and phone records. Medrano testified that he drove a truck of furniture to New York for Cantu and did not knowingly transport cocaine. Having disclaimed any knowledge of the cocaine, Medrano understandably offered no evidence as to the amount of cocaine involved, and there is no suggestion in the record that a

8

quantity of cocaine less than 840 kilograms could have been involved. Accordingly, the evidence that at least 840 kilograms of cocaine was transported is overwhelming, and we have no basis for concluding that the alleged Apprendi error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Johnson, 520 U.S. at 470. Accordingly, we affirm Medrano's sentence.

B. Flores's Sentence

In arguing that his sentence of thirty years of imprisonment violates Apprendi, Flores incorrectly assumes that the applicable statutory maximum is twenty years. Having been convicted of a prior felony drug offense, Flores is subject to a statutory maximum of thirty years of imprisonment. § 841(b)(1)(C);[6] see also Keith, 230 F.3d at 786 (noting that the defendant's maximum prison sentence under § 841(b)(1)(C) is thirty years because of his prior felony conviction). We find Apprendi error only in those cases where a defendant's sentence exceeds the statutory maximum. See United States v. Salazar-Flores, 238 F.3d 672, 673-74 (5th Cir. 2001). Because Flores's sentence of thirty years of imprisonment does not exceed the statutory maximum applicable to him, it does not violate Apprendi. Accordingly, we affirm Flores's sentence.

---

[6] Section 841(b)(1)(C) provides that "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years."

9

## IV. Evidence of Medrano's Prior Drug Transactions

Medrano argues that the district court improperly admitted documents and testimony referencing past, unrelated drug transactions under Federal Rule of Evidence 404(b) ("Rule 404(b)").[7] Although at one point during trial Medrano objected to some documentary evidence referencing past drug transactions, his objection was a hearsay objection. Medrano never objected to documentary or testimonial evidence concerning prior drug transactions on Rule 404(b) grounds. Despite the lack of a Rule 404(b) objection, the district court explicitly ruled that the extrinsic act evidence relating to past drug transactions was admissible under Rule 404(b).[8]

Generally, we review the district court's rulings regarding admissibility of extrinsic act evidence under Rule 404(b) for abuse of discretion. See Alarcon, 261 F.3d at 424. Because

---

[7] Rule 404(b) provides that:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[8] Medrano argues that the district court erred because it did not articulate on the record its balancing of probative value and prejudice. Because Medrano did not request that the district court perform this analysis, however, the court need not do so on the record. See United States v. Alarcon, 261 F.3d 416, 424 (5th Cir. 2001).

10

Medrano failed to object to the Rule 404(b) ruling, however, we review the district court's ruling for plain error.  See United States v. Smith, 203 F.3d 884, 890 (5th Cir. 2000).  An error is plain only when "in the context of the entire case, it is 'so obvious and substantial that [the district court's] failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings.'"  Id. (quoting United States v. Lopez, 923 F.2d 47, 50 (5th Cir. 1991)).

When determining the admissibility of evidence under Rule 404(b), this court applies the two-part test established in United States v. Beechum, 582 F.2d 898 (5th Cir. 1978).  First, we ask whether the extrinsic act evidence "is relevant to an issue other than the defendant's character."  Id. at 911.  We have held that evidence of past drug transactions is relevant in a drug conspiracy prosecution to establish criminal intent.  See United States v. Misher, 99 F.3d 664, 670 (5th Cir. 1996).  Medrano placed his intent in issue by pleading not guilty.  See id.; see also United States v. Wilwright, 56 F.3d 586, 589 (5th Cir. 1995).  Therefore, evidence of Medrano's past drug transactions is relevant to show his intent, and the first step of the Beechum inquiry is satisfied.

Second, we determine whether the probative value of the extrinsic act evidence is substantially outweighed by its undue prejudice.  See Beechum, 582 F.2d at 911.  When considering the probative value of extrinsic act evidence, we examine the

11

following factors: "(1) the extent to which the defendant's unlawful intent is established by other evidence, (2) the overall similarity of the extrinsic and charged offenses, and (3) the amount of time that separates the extrinsic and charged offenses." United States v. Chavez, 119 F.3d 342, 346-47 (5th Cir. 1997). First, Cantu's testimony regarding Medrano's past drug transactions and the documentary evidence supporting that testimony is critical to the government's proof of Medrano's criminal intent. Medrano testified that he never knowingly participated in drug transactions with Cantu. Because there is little evidence of Medrano's intent apart from his own testimony, evidence tending to show that Medrano knowingly collaborated with Cantu in prior drug transactions is very probative of Medrano's criminal intent regarding the cocaine transaction at issue. See id. at 347 (finding a fifteen-year-old conviction to be probative of intent, particularly "given the lack of other evidence of [the defendant's] intent").

Second, the prior marijuana transactions are sufficiently similar to the cocaine transaction at issue to be probative. Both transactions involved Medrano and Cantu and the transportation of large loads of drugs out of Laredo, Texas. The fact that the prior transaction involved marijuana instead of cocaine does not destroy the probative value of that transaction. See id. at 347 (finding a past conviction for a cocaine conspiracy probative in a case regarding a marijuana conspiracy).

12

Third, the time period between the marijuana transactions and the cocaine transaction is probative of Medrano's intent because the marijuana transactions occurred mere months before the cocaine transaction at issue.

Furthermore, when instructing the jury, the district court cautioned that evidence of extrinsic acts must not be considered "in deciding if the Defendant committed the acts charged in the indictment." The district court instructed the jury to consider such evidence only "to determine whether the Defendant had the state of mind or intent necessary to commit the crime charged in the indictment." Id. These jury instructions minimized any potential prejudice to Medrano. See United States v. Gadison, 8 F.3d 186, 192 (5th Cir. 1993). These facts suggest that the probative value of the extrinsic act evidence is not substantially outweighed by its undue prejudice. For these reasons, we find that the district court did not commit plain error, or indeed any error at all, when it admitted evidence of Medrano's prior marijuana transactions under Rule 404(b).

### V. Medrano's Obstruction of Justice Enhancement

Medrano argues that the district court improperly imposed a two-level sentence enhancement for obstruction of justice, specifically perjury, pursuant to § 3C1.1 of the United States Sentencing Guidelines (the "Guidelines"). See U.S. SENTENCING

13

GUIDELINES MANUAL § 3C1.1 (1998). Generally, we review the district court's interpretation and application of the Guidelines de novo and its factual findings, such as a finding of obstruction of justice, for clear error. See United States v. Huerta, 182 F.3d 361, 364 (5th Cir. 1999). We review the district court's finding of obstruction of justice for plain error, however, if the defendant did not object to the sufficiency of the finding in the sentencing hearing. See id. at 366.

During the sentencing hearing, Medrano objected to the constitutionality of the two-level enhancement for obstruction of justice. However, he never objected to the sufficiency of the district court's factual findings regarding his obstruction of justice. Id. In Huerta, the defendant objected to the district court's obstruction of justice finding by arguing: (1) that there was a lack of evidence showing that the defendant fled from the arresting officers and (2) that mere flight to avoid apprehension did not constitute obstruction of justice. See 182 F.3d at 363. On appeal, Huerta raised those same arguments and also argued that the district court had misapplied the Guidelines by not explicitly addressing the issue of willfulness. See id. at 365-66. This court reviewed that new challenge under the plain error standard. See id. at 366. Our holding in Huerta suggests that a specific objection to a two-level enhancement for obstruction of justice before the district court does not preserve for appeal other objections to the enhancement. Because Medrano only

14

objected to the constitutionality of the two-level enhancement for obstruction of justice and did not specifically object to the sufficiency of the district court's factual findings regarding that enhancement, we review the new objection for plain error only.

The Presentence Report (the "PSR") recommended a two-level enhancement of Medrano's sentence for obstruction of justice. The PSR stated: "The defendant testified falsely at his trial. [He] testified falsely concerning the offense, in regard to his role and that of the codefendants. He has obstructed justice in this case." Id. The district court adopted the factual findings set forth in the PSR. The commentary to § 3C1.1 of the Guidelines states that perjury is one example of the type of conduct to which a two-level enhancement for obstruction of justice may apply. § 3C1.1 cmt. 4(b). In United States v. Dunnigan, 507 U.S. 87 (1993), the Supreme Court explained that a defendant commits perjury for purposes of § 3C1.1 if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." Id. at 95. Although favored, separate findings on each element of perjury are not required. Id. Medrano concedes that by adopting the findings of the PSR, the district court made findings concerning two elements required for perjury: (1) false testimony and (2) concerning a

15

material matter.  Medrano argues that the district court erred by not explicitly finding willfulness.

In United States v. Morris, 131 F.3d 1136 (5th Cir. 1997), the district court found that "Morris was untruthful at trial with respect to material matters in this case."  Id. at 1140. Despite the fact that the district court in Morris never explicitly found willfulness, we found no clear error in the court's imposition of a two-level enhancement for obstruction of justice.  Id.  Similarly, despite the lack of an explicit district court finding regarding Medrano's willfulness in the instant case, there is no clear error and, thus, no plain error.

In spite of testimonial and documentary evidence to the contrary, Medrano claimed throughout his trial that he had no knowledge of the cocaine conspiracy.  We find that the district court's findings regarding Medrano's false testimony on material matters are sufficient to support the two-level enhancement for obstruction of justice.


## VI.  Conclusion

For all the foregoing reasons, we find (1) that there is sufficient evidence to support Flores's and Medrano's guilty verdicts, (2) that the alleged Apprendi error in Medrano's prison sentence was not plain error, (3) that Flores's prison sentence contains no Apprendi error, (4) that the district court's

16

admission of evidence of Medrano's past drug transactions was not plain error, and (4) that the two-level enhancement of Medrano's sentence was not plain error.  Thus, we AFFIRM the defendants' convictions and sentences.

AFFIRMED.