UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-20238
SUMMARY CALENDAR
_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

THOMAS CHERIAN, also known as Selvoy

Defendant - Appellant

_____

Appeal from the United States District Court
for theSouthern District of Texas
(H-00-CR-498-ALL)
_____

January 22, 2003

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:[1]

        In this appeal we review the jury trial conviction of Defendant Thomas Cherian for using

a facility of interstate commerce to entice a minor to engage in sexual activity, a violation of 18

U.S.C. § 2422(b). For the following reasons, we affirm the district court's judgement.

I. FACTUAL & PROCEDURAL BACKGROUND

---

        [1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

Special Agent Geoffrey Binney, of the Federal Bureau of Investigation ("FBI"), was responsible for supervising an FBI violent crime squad in Houston specializing in Internet crimes against children. The unit was part of the national initiative known as "Innocent Images." FBI investigators assigned to such units operate "online" in an undercover capacity and engage in conversations with individuals dealing in the transmission of child pornography and persons attempting to arrange meetings between adults and minors.

The FBI operatives are subject to a series of agency guidelines that restrict the nature of their contact with potential violators. For example, agents may not escalate any type of sexual conversation and are prohibited from initiating conversation except in special circumstances.

On June 9, 1999, Agent Binney was operating online in a "chat room" entitled "Mom and Daughter Sex." Agent Binney was posing as a thirteen-year-old girl named "Jennie" using the screen name "Tammie13" when he was contacted by an individual using the screen name "Yesis." After a brief initial "chat," their online conversation was moved to an IQC internet system, at which time "Yesis" began using the screen name "Selvoy" and "Tammie13" began using the screen name "Jennie."

For the next thirteen months, "Selvoy," who was later discovered to be Thomas Cherian, corresponded via the internet with various FBI agents posing as thirteen-year-old "Jennie." Their conversations involved discussions of sexual preferences, sexual experiences, and plans to meet for the purpose of having sex.

On July 7, 2000, Cherian was arrested when he arrived for a planned sexual rendevous with "Jennie." Thereafter, Cherian was indicted in the United States District Court for the Southern District of Texas. He was charged with a violation of 18 U.S.C. § 2422(b), to wit, using

-2-

the mail or any means or facility of interstate or foreign commerce to entice or coerce a minor to engage in sexual activity.

Cherian was tried before a jury. The district court instructed the jury on the defense of entrapment, but the jury rejected the defense and convicted Cherian. The district court denied Cherian's motion for judgement of acquittal and sentenced him to 366 days of imprisonment and three years of supervised release. On July 18, 2002, this Court denied release pending appeal, and this appeal followed.

## II. The Entrapment Jury Instruction

On appeal, Charian argues that the jury instruction on entrapment was deficient, in that it inadequately defined the predisposition element of the entrapment defense. As Cherian correctly notes, this issue is subject to plain-error review because his attorney did not object to the court's instruction at the time it was given. *See United States v. McClatchy*, 249 F.3d 348, 357 (5th Cir.), *cert. denied*, 122 S. Ct. 217 (2001).

As this Court has stated, "[a] trial judge has 'substantial latitude in tailoring his [or her] instructions as long as they fairly and adequately cover the issues presented in the case.'" *United States v. Hudson*, 982 F.2d 160, 162 (5th Cir. 1993)(quoting *United States v. Kimmel*, 777 F.2d 290, 293 (5th Cir. 1985), *cert. denied*, 476 U.S. 1104 (1986)). Error in a jury charge is plain only when, considering the entire charge and evidence presented against the defendant, there is a likelihood of a grave miscarriage of justice. *United States v. Sellers*, 926 F.2d 410, 417 (5th Cir. 1991).

The entrapment instruction that was given reads as follows:

> When the government induces a person to commit a crime that he normally would not
> have committed, he has been entrapped and is not guilty. This is different from merely

furnishing him with an opportunity to do something that he was going to do anyway. In this case, the government must prove beyond a reasonable doubt that Charian was ready, willing and likely to entice or – that should be persuade to be consistent. To persuade someone under 17 into sex acts even had the government left him alone. If the government does not prove this, you must find Cherian not guilty.

Cherian submits that the fatal defect in the above instruction was that it did not focus the jury's attention on his disposition before he was contacted by government agents. Appellant points to the Supreme Court's decision in *Jacobson v. United States*, 503 U.S. 540, 549 (1992), which states that "[t]he prosecution must prove beyond [a] reasonable doubt that the defendant was predisposed to commit the criminal act prior to first being approached by government agents." Cherian contends the instruction that was given constitutes plain error because the evidence indicates he was not predisposed to have sexual contact with a minor before he began the correspondence with government agents. According to Appellant, the reference to readiness and willingness in the instruction given by the court could have been interpreted by the jury as a direction to focus on his disposition at the time of, rather than prior to, the government's involvement.

Cherian argues that the court should have given the Fifth Circuit's pattern instruction on entrapment because the pattern instruction directs the jury's attention to the defendant's disposition before the government became involved.[2] The pattern instruction directs the jury to reject an entrapment defense if it finds beyond a reasonable doubt that "before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit a crime such as charged in the indictment, whenever opportunity was afforded, and

_____

[2] Interestingly, in the district court, the Government requested the Fifth Circuit pattern instruction on entrapment, while Cherian and the court agreed that the alternative instruction –i.e., the one that was actually given– was preferable.

that government officers or their agents did no more than offer the opportunity . . . ." Fifth Circuit Pattern Jury Instruction (Criminal Cases), No. 1.28 (2001).

Though he submits that the pattern instruction would have been proper due to its focus, temporally, on the defendant's disposition prior to government involvement, Cherian is not asserting that the alleged error stems from the district court's failure to give the pattern instruction on entrapment. Rather, as stated above, he is arguing that the trial court's instruction, as given, prevented the jury from considering appellant's defense of a lack of predisposition.

The record reveals that the first online encounter between Cherian and "Jennie" occurred when Cherian contacted "Jennie" in an internet chat room entitled "Mom and Daughter Sex." The chat room was "predicated" for FBI purposes due to its emphasis on sexual conversations between women and young females. Cherian claims that he never "entered" the chat room, but, rather, that he contacted "Jennie" using Mirc, an internet "chat" software program. Even assuming Cherian did not enter the chat room, as he asserts, it is still unclear how Cherian's contact with "Jennie" came about –i.e., the record does not provide a coherent account of how, exactly, the Mirc system works. However, from Cherian's limited description of Mirc software, it is clear that, even if he did not enter the predicated chat room, he knew –or could have known– that "Jennie" was operating in the "Mom and Daughter Sex" chat room.[3] Additionally, it is undisputed that Cherian initiated the contact, and that "Jennie" told Cherian she was thirteen-years-old.

During their initial "chat," Cherian questioned Jennie about her sexual experiences, asked

---

[3] Cherian testified that, when contacting a person using Mirc, the program "will list all the chat rooms that person is in." Record Vol. 5, p.248.

her where her parents were and whether she was alone, offered to pick her up so that they could have oral sex, and suggested that if all went well, they could meet again the next weekend to "go all out."

The entrapment instruction given by the court directed the jury not to convict Cherian unless it found that he was "ready, willing and likely to . . . persuade someone under 17 into sex acts even had the government left him alone." Although the instruction does not have the temporal focus found in the Fifth Circuit pattern instruction, it did direct the jury to determine whether Cherian was ready, willing and likely –i.e., disposed– to commit the criminal act absent government intervention.

We believe this instruction fairly and adequately covered the issue presented in the case. *See Hudson*, 982 F.2d at 162. Furthermore, when the entire jury charge is considered in combination with the evidence presented at trial, Cherian has not established that the entrapment instruction resulted in the likelihood of a grave miscarriage of justice. *See Sellers*, 926 F.2d at 417. We therefore hold that the entrapment instruction, as given, did not rise to the level of plain error.

As noted above, Cherian argues that the evidence does not indicate he was predisposed to commit the crime for which he was convicted; the issue of Cherian's predisposition, however, is more directly related to his argument that he was entrapped, and it is to that issue that we next turn.

### III. Entrapment

The crux of Cherian's appeal is that he was legally entrapped, and that therefore his conviction must be reversed. Cherian does not dispute that his conduct violated the law

prohibiting use of a facility of interstate commerce to entice a minor to engage in sexual activity, but he argues that he never would have committed the offense absent government inducement. In other words, Cherian submits that, prior to the Government's involvement, he was not predisposed to commit the crime in question –and that there is no evidence to suggest otherwise.

Entrapment is an affirmative defense. *United States v. Bruce*, 145 F.3d 247, 256 (5th Cir.)(en banc), *cert. denied*, 525 U.S. 973, 119 S.Ct. 426 (1998). A defendant claiming entrapment is required to show that he was induced to commit a criminal act by a government agent and that he was not predisposed to commit the act without the inducement. *United States v. Thompson*, 130 F.3d 676, 689 (5th Cir. 1997)(citations omitted). Once the defendant makes a prima facie showing of entrapment, the government then bears the burden of proving beyond a reasonable doubt that the defendant was not entrapped. *See United States v. Byrd*, 31 F.3d 1329, 1335 (5th Cir. 1994).

Because entrapment is the result of a jury finding of governmental inducement and no predisposition, a jury must necessarily find that there was no entrapment when the government proves beyond a reasonable doubt either the existence of predisposition or the non-existence of inducement. *Thompson*, 130 F.3d at 689. In other words, entrapment can be disproved in one of two ways, by showing beyond a reasonable doubt either that the defendant was not induced or that he was predisposed to commit the crime.

In the case at hand, the jury rejected Cherian's entrapment defense. In these circumstances, the applicable standard of review is the same as that which applies to sufficiency of the evidence. *United States v. Rodriguez*, 43 F.3d 117, 126 (5th Cir. 1995). "In other words, we must accept every fact in the light most favorable to the jury's guilty verdict, and we may reverse

only if no rational jury could have found beyond a reasonable doubt either (1) lack of government inducement or (2) predisposition to commit the charged crime." *United States v. Reyes*, 239 F.3d 722, 739 (5th Cir.), *cert. denied*, 533 U.S. 961, 122 S.Ct. 156 (2001).

Entrapment occurs "when the criminal design originates with the officials of the government , and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute. *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000), *cert. denied*, 532 U.S. 959 (2001)(quoting *Sorrells v. United States*, 287 U.S. 435, 442, 53 S.Ct. 210, 212-13 (1932). The predisposition portion of an entrapment inquiry focuses on whether the defendant was an "unwary innocent" who exercised poor judgement or an "unwary criminal" who readily availed himself of the opportunity to perpetrate the offense. *See United States v. Bradfield*, 113 F.3d 515, 522 (5th Cir. 1997).

This Court has recognized a number of factors that may indicate a defendant's predisposition, including the defendant's "eagerness to participate in the transaction" and "his ready response to the government's inducement offer." *United States v. Chavez*, 119 F.3d 342, 346 (5th Cir. 1997)(quotation and citations omitted). Furthermore, according to circuit precedent, entrapment cannot be established merely by showing that "a Government agent has provided the accused with the opportunity or facilities for the commission of the crime." *United States v. Brace*, 145 F.3d 247, 260 (5th Cir. 1998)(en banc).

In light of the controlling case law discussed above, in order to prevail on his entrapment argument Cherian must show that no rational jury could have found that he was predisposed to entice a minor to meet him for sex; if he demonstrates that Government agents merely provided him with the opportunity to do so, his arguments cannot succeed.

As previously noted, Cherian first initiated contact with "Jennie" and did so while "Jennie" was operating online in a chat room called "Mom and Daughter Sex," which was known as such because of its emphasis on sexually explicit conversations between women and young females.

Over the course of their online relationship, Cherian repeatedly engaged in sexually explicit conversations with "Jennie." The conversations were, without notable exception, steered by Cherian, and included inquiries about "Jennie's" sexual experiences as well as descriptions of the sexual activities he proposed the pair could engage in at the time of their meeting. In fact, during their first online conversation, Cherian brought up the notion of a potential sexual rendevous. Their initial communication included Cherian questioning whether "Jennie" was willing to have sex, whether she was able to sneak out of her parents house to meet at night, and even explored possible dates for such a meeting.

The record shows that Cherian was responsible for planning the meeting at which he was arrested, including the details such as the time and place. When arrested, Cherian had condoms in his wallet, and Trang Chung, who was with Cherian when he was arrested, testified that Cherian was meeting someone he believed to be a minor and that he intended to have sex with that minor.

Cherian argues that his situation is akin to that of the defendant in *Jacobson*, insofar as he was not predisposed to have a sexual interest in children prior to the government contacting him. In *Jacobson v. United States*, 503 U.S. 540, 112 S.Ct. 1535, the petitioner, who had been convicted of knowingly receiving child pornography through the mail, challenged his conviction based on the premise that he was entrapped. The Supreme Court determined that "the government overstepped the line between setting a trap for the 'unwary innocent' and the 'unwary criminals,' and as a matter of law failed to establish that petitioner was independently

predisposed to commit the crime for which he was arrested"; as a result, the defendant's conviction was reversed. *Id*. at 542 (internal citation omitted). The key to the reversal in *Jacobson* was that, according to the court, the Government failed to carry its burden of proving that the defendant was predisposed to violate the law *before* the Government intervened. *Id*. at 549, n.2.

Although there are some similarities between the factual scenario found in *Jacobson* and the facts surrounding the case at hand, there are significant distinctions that prevent Cherian's argument from succeeding.

In *Jacobson*, it was the Government that initiated communications with the Defendant, and, though Defendant did reply to several surveys and questionnaires, Government agents were responsible for the bulk of the correspondence –which was solicitous in nature and continued for more than two years before the Defendant actually expressed any interest in breaking the law. By contrast, in the case at hand, it was Cherian who first contacted Government agents –who were posing as "Jennie"– and it was Cherian who suggested a date to have oral sex within minutes of meeting "Jennie" and learning that she was a minor.

The evidence, when viewed in the light most favorable to the verdict, establishes that Cherian first contacted "Jennie," had explicit conversations with her, and arranged a meeting with her for the purpose of having sex. A determination that Cherian "read[ily] respond[ed] to the government's inducement offer" and was "eager to particpate in the transaction" is not incompatible with the record. Such evidence can be used to prove that the defendant was predisposed to commit a crime. *See Chavez*, 119 F.3d at 346; *see also Brace*, 145 F.3d 247, 262 ("evidence of the defendant's ready response to the solicitation, as well as evidence of independently motivated behavior that occurs after government solicitation begins, can be used to

prove that the defendant was predisposed").

In addition, in the case at hand, Government agents did little more than operate online posing as an underage girl; Cherian initiated the conversation and on several occasions –including their first online interaction– proposed they meet for a sexual encounter. He also proposed the meeting at which he was arrested. The evidence –again, viewed in the light most favorable to the jury's verdict– indicates that the Government merely provided an opportunity for Cherian to commit a crime. Therefore, the evidence was sufficient to allow a rational jury to reject Cherian's asserted entrapment defense. *See Brace*, 145 F.3d at 260.

## IV. CONCLUSION

For the foregoing reasons, the judgement of the district court is AFFIRMED.